ORIGINAL

NOV 30 2005

IN THE
UNITED STATES COURT OF FEDERAL CLAIMS

ZOYA ATAMIRZAYEVA,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

No. 05-1245L

## COMPLAINT

1. This is a civil action brought by Mrs. Zoya Atamirzayeva, a citizen of the Republic of Uzbekistan and resident of the city of Tashkent, Uzbekistan. Mrs. Atamirzayeva owned a cafeteria adjacent to the United States Embassy in Tashkent. In December 1999, local authorities in Tashkent forcibly took and destroyed her cafeteria because of "its closeness to the Embassy of the United States of America and for the security improvements of the Embassy." The local authorities in Tashkent subsequently confirmed that they had destroyed the cafeteria at the express direction of, and for the benefit of, the United States Government. Mrs. Atamirzayeva has never been compensated for the taking of her property, in direct violation of the Takings Clause of the Fifth Amendment to the United States Constitution.

## I.
## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction of this civil action and is authorized to grant the requested relief pursuant to 28 U.S.C. § 1491. A cause of action exists under the Fifth Amendment to the Constitution of the United States. Because Uzbek law accords to citizens of the United States the right to prosecute claims against the Government of Uzbekistan in Uzbek

courts, this Court is not deprived of jurisdiction by 28 U.S.C. § 2502(a). *See* CONST. OF UZB. art. 23, 35, 44.

## II.
## PARTIES

3. Plaintiff, Mrs. Zoya Atamirzayeva, is a citizen of the Republic of Uzbekistan. She resides in the city of Tashkent, which is the capital of the Republic of Uzbekistan.

4. Defendant United States of America is the Executive Branch of the Government.

## III.
## FACTS

### A. Background regarding Plaintiff's Cafeteria

5. In 1994, Mrs. Atamirzayeva became the sole owner of a cafeteria called Feruza. The Feruza complex consisted of a main building about 2000 square feet large, an outdoor drink stand, a detached storage facility, a guard post, and a parking lot.

6. Feruza was located on property adjacent to the U.S. Embassy in Tashkent, Uzbekistan. The Republic of Uzbekistan owned the real property upon which Feruza was located; however, Mrs. Atamirzayeva was the sole owner of the buildings located on that real property and the business of Feruza.

7. Mrs. Atamirzayeva employed about twenty people at Feruza, six of whom were members of her immediate family. Feruza was a profitable restaurant, and was the primary source of income for Mrs. Atamirzayeva and nine members of her immediate family.

### B. State Department Concerns about the Security of the U.S. Embassy in Tashkent

8. In August 1998, terrorists bombed the U.S. embassies in Nairobi, Kenya and Dar es Salaam, Tanzania. Thereafter, the U.S. Department of State (the "State Department") announced a major new initiative to improve security at U.S. embassies around the world – particularly in

those countries where U.S. interests were facing "medium" or "high" security risks and, therefore, were regarded as "most vulnerable."

9. Uzbekistan presents severe terrorist risks to U.S. interests. As described by the State Department:

> [T]he United States Government continues to receive information that indicates that terrorist groups may be planning future attacks, possibly against U.S. interests, in Uzbekistan. [¶] Supporters of terrorist groups such as the Islamic Movement of Uzbekistan, Al-Qaida, the Islamic Jihad Union, and the Eastern Turkistan Islamic Movement are active in the region. Members of these groups . . . have attacked U.S. Government interests in the past, including the U.S. Embassy in Tashkent. . . . [¶] Uzbekistan experienced a wave of terrorist violence in 2004. Three suicide bombings occurred in July 2004 in Tashkent, including one outside the U.S. Embassy. . . .
>
> . . . .
>
> The U.S. Embassy in Tashkent continues to employ heightened security precautions.

10. Upon information and belief, the State Department first added a terrorism warning to its "consular information sheet" for Americans traveling to Uzbekistan in September 1999, just three months before the destruction of Feruza. Although not yet as explicit as the warning quoted above, the language published in September 1999 expressed official State Department concern about the prospect of "terrorist attacks" in Uzbekistan.

11. The State Department's embassy security initiative continued through all times relevant to this Complaint. The State Department recognized in 1999 that the U.S. Embassy in Tashkent was at risk of terrorist attack and implemented numerous measures to increase the security of the Embassy's physical plant and its personnel.

12. Also in 1999, pursuant to its embassy security initiative, the State Department began acquiring properties adjacent to U.S. embassies worldwide. The State Department in fiscal year

1999 "obligated approximately $15.3 million to acquire real property" in Tashkent, Uzbekistan and at eleven other posts. By September 30, 1999, in response to requests from thirty U.S. overseas posts, the State Department acquired properties to increase the security perimeters (or "setbacks") at five U.S. embassies and was negotiating for properties at 25 additional posts. By 2003 the State Department had "acquired adjacent land at 34 posts to increase setback since the 1998 embassy bombings."

13. In November 1999, the U.S. Congress passed the Secure Embassy Construction and Counterterrorism Act of 1999, 22 U.S.C. § 4865 nt., Pub. L. No. 106-113 (1999) (the "Secure Embassy Act"). President Clinton signed the Secure Embassy Act into law on November 29, 1999. It authorized $4.6 billion to be spent over five years by the State Department to bring diplomatic facilities into compliance with security requirements by (i) acquiring diplomatic facilities and "if necessary, any residences or other structures located in close physical proximity to such facilities;" and (ii) providing "major security enhancement" to such facilities.

14. Several months later, in April 2000, then Secretary of State Madeleine Albright highlighted ongoing concern for the security of the U.S. Embassy in Tashkent. On a visit to the Embassy, she stated:

> I have to tell you, this is a facility we use, you might be surprised, basically as the poster child of why we need money. . . . [¶] President Clinton and I have been consistently pushing for larger budgets in order to be able to get you the resources that are necessary. [¶] The weird part is trying to persuade Congress that you need both safe buildings and something to do in them. You have your choice: you can either have safe buildings with no people, or people in unsafe buildings. That seems to be the choices that are starkly placed. But we are trying to get both, because we so respect the work that you do.

Secretary Albright also flagged terrorism in Uzbekistan as a priority, stating:

> This is an area of the world that is tremendously important in terms of what it produces and what it doesn't produce. I think that the

> production of some narco-trafficking and terrorist and extremist activity is obviously something that is very important to us and we're spending a lot of time on trying to deal with that.

### C. The Destruction of Feruza at the Direction of the U.S. Embassy in Tashkent

15. On or about December 20, 1999, just weeks after enactment of the Secure Embassy Act and in the midst of the State Department's global efforts to improve security for U.S. embassies, the United States through the U.S. Embassy in Tashkent made an express verbal "demand" that the local authorities in Tashkent destroy Feruza within three days "for the sake of the security of the US Embassy."

16. On or about December 23, 1999, the local authorities in Tashkent forcibly expelled Mrs. Atamirzayeva from Feruza. They seized the property, and destroyed the cafeteria. They acted at the demand of the U.S. Embassy in Tashkent and for its benefit. Officials from the U.S. Embassy were physically present at and oversaw the demolition of Feruza.

17. The property where Feruza had been located now contains a security checkpoint for the U.S. Embassy in Tashkent, constructed in part from the remains of Feruza, which is manned by armed Uzbek soldiers.

### D. Uzbekistan's Dependence on the United States

18. At the time the Uzbek Government executed the United States' demand to destroy Feruza, Uzbekistan was a fledging state confronted by severe threats to its national security. Uzbekistan received crucial aid from the United States, which gave the United States pervasive influence over Uzbekistan in and around 1999 and made irresistible its demand for the destruction of Feruza.

19. The United States and Uzbekistan were engaged in a "secret alliance" at all times relevant to this Complaint. Indeed, that alliance had "intensified" in and around 1999, after the 1998 bombings of the U.S. embassies in Kenya and Tanzania. Thomas E. Ricks & Susan B.

Glasser, *U.S. Operated Secret Alliance with Uzbekistan*, Wash. Post, Oct. 14, 2001, at A1 (quoting an interview with Rustam Jumaev, the chief spokesman for Uzbek President Islam Karimov).

20. According to the *New York Times*, the United States provided considerable military aid to Uzbekistan in and around 1999, including: (i) Green Berets from the U.S. Army instructed Uzbek troops in "marksmanship, infantry patrolling, map reading and the like"; (ii) the United States "helped the Uzbek military and border guards acquire nonlethal equipment, including helmets, flak jackets, Humvee transport vehicles, night-vision goggles and radiation detectors"; and (iii) the United States "enroll[ed] Uzbek officers in American military schools." C. J. Chivers, *Long Before War, Green Berets Built Military Ties to Uzbekistan*, N.Y. Times, Oct. 25, 2001, at A1. In sum, the United States helped Uzbekistan to create a modern national military.

21. In 1999, at the time Uzbekistan received this U.S. military assistance, Uzbekistan faced key threats to its national security. First, Uzbek troops were fighting the Islamic Movement of Uzbekistan ("IMU"), "a home-grown terrorist group linked to [Osama] bin Laden. The group launched armed incursions into Uzbekistan in 1999 and 2000 and is blamed by [Uzbek President] Karimov for setting off explosions in the capital [Tashkent] that killed 18 people." Thomas E. Ricks & Susan B. Glasser, *U.S. Operated Secret Alliance with Uzbekistan*, Wash. Post, Oct. 14, 2001, at A1. Second, Uzbekistan was "alarm[ed]" by developments in neighboring Afghanistan, where the bid Laden-affiliated regime "captured the territory adjoining Uzbekistan in 1998" and "harbored" IMU fighters. *Id.* Finally, Uzbekistan – which had been part of the Soviet Union until 1991 – was striving to maintain and build its independence in the face of renewed Russian interest in the Newly Independent States of Central Asia by reducing its

military dependence on Russia, which had previously been the only country to provide military training for the Uzbek army.

22. Beyond military assistance, the United States also provided significant economic assistance to Uzbekistan. In 1999, the Uzbek economy effectively collapsed, rendering the country increasingly dependent on foreign aid. The United States responded by allotting an estimated $30 million in assistance to Uzbekistan in 1999, an increase of almost 40 percent over 1998 levels. In 2000, U.S. aid increased another 33 percent, to $40 million.

## E. Mrs. Atamirzayeva's Unsuccessful Efforts to Obtain Compensation

23. Mrs. Atamirzayeva has received no compensation from any source for the destruction of Feruza. She and her family have demanded compensation from both the U.S. Embassy in Tashkent and the local authorities in Tashkent. Although the U.S. Embassy in Tashkent met with Mrs. Atamirzayeva and her family over the course of several months regarding her request for compensation, the United States through the Embassy ultimately refused her request. The local authorities in Tashkent also denied Mrs. Atamirzayeva's request for compensation, implying that responsibility for compensation lay with the United States because their actions were done "for the security improvements of the Embassy."

24. All real property in Uzbekistan is owned by the state. All construction requires the permission of the state. The local authorities in Tashkent have authorized Mrs. Atamirzayeva to construct a new cafeteria on another plot of land. This authorization is set to expire in July 2006, unless a new cafeteria has been constructed by that time. Mrs. Atamirzayeva lacks the resources needed to build a new cafeteria.

25. Mrs. Atamirzayeva has never objected to the fact that the U.S. Embassy in Tashkent caused the destruction of her property, and does not so object now. To the contrary, Mrs. Atamirzayeva understands and sympathizes with the need to protect the U.S. Embassy in

Tashkent from terrorist attack. She demands only that she receive just compensation for the property taken from her.

## IV.
## CLAIM

**The United States Violated the Fifth Amendment to the Constitution When It Ordered Feruza to be Destroyed Without Compensation**

26. Plaintiff realleges and incorporates herein by reference each and every allegation set forth above, as if fully repeated herein.

27. The Takings Clause of the Fifth Amendment to the United States Constitution states that "nor shall private property be taken for public use, without just compensation."

28. The destruction of Feruza is a taking of property.

29. The destruction of Feruza was done at the express direction of the U.S. Government, and conferred a substantial benefit on the U.S. Government.

30. The United States is liable for the destruction of Feruza under the Takings Clause of the Fifth Amendment to the United States Constitution, and is obliged to pay just compensation.

## V.
## PRAYER FOR RELIEF

31. Wherefore, based on the allegations set forth above, Plaintiff hereby seeks:

1. Compensation in an amount to be determined at trial, payable in U.S. dollars, for the destruction of Feruza;
2. Interest from the date of the destruction of Feruza;
3. Reasonable attorneys' fees and the costs of this action; and
4. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Perry S. Bechky by Christopher M. Ryan

Perry S. Bechky
Christopher M. Ryan
Wesley J. Heath

SHEARMAN & STERLING LLP
801 Pennsylvania Avenue, N.W.
Suite 900
Washington, D.C. 20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100

*Attorneys for Plaintiff*

Dated: November 30, 2005