**IN THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ZOYA ATAMIRZAYEVA,** | ) | |
| **Plaintiff,** | ) | **No. 05-1245 L** |
| **v.** | ) | **Honorable Edward J. Damich** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**JOINT PRELIMINARY STATUS REPORT**

Plaintiff, Zoya Atamirzayeva, and Defendant, United States of America, by their respective counsel, submit this Joint Preliminary Status Report pursuant to Appendix A to the Rules of the United States Court of Federal Claims ("RCFC") and the Court's February 10, 2006, Special Procedures Order. The early meeting of counsel was held on April 3, 2006, by telephone, and was attended by:

- Perry S. Bechky, Christopher M. Ryan, and Wesley J. Heath of Shearman & Sterling L.L.P. for Plaintiff; and
- James D. Gette of the Department of Justice for Defendant.

Counsel for the parties respectfully submit the following report:

**A. Jurisdiction of the Court:**

Plaintiff's Statement

Plaintiff seeks compensation for her property, which was taken by the United States without payment of just compensation as required by the Fifth Amendment to the

U.S. Constitution. Accordingly, this Court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491. Because Uzbek law accords to citizens of the United States the right to prosecute claims against the Government of Uzbekistan in Uzbek courts, this Court is not deprived of jurisdiction by 28 U.S.C. § 2502(a). *See* CONST. OF UZB. art. 23, 35, 44.

Defendant's Answer pled lack of subject matter jurisdiction as an affirmative defense. Nevertheless, Defendant has not yet come forward with an explanation of its jurisdictional objections (if any). Rather, Defendant is moving forward with other aspects of the litigation – an approach that apparently intends to preserve Defendant's ability to raise jurisdictional objections at any time convenient to it.

Plaintiff believes that Defendant's approach is inconsistent with the "just, speedy, and inexpensive determination" of this matter. Plaintiff respectfully requests that the Court order Defendant to come forward forthwith – specifically, within ten (10) days as the Defendant has already had the Complaint for more than 120 days – with a brief explaining any jurisdictional objections reasonably available to it at this time. If Defendant comes forward later with any jurisdictional objections reasonably available to it at this time, Plaintiff reserves the right to seek (i) an order requiring Defendant to compensate Plaintiff for any excess fees and costs incurred as a result of Defendant's delay; (ii) appropriate adjustments in the litigation schedule; and (iii) any other appropriate relief.

Defendant's Statement

The United States agrees that the Tucker Act, 28 U.S.C. § 1491, confers jurisdiction on this Court to adjudicate Fifth Amendment taking claims. The United States believes that this is an appropriate statement of its position on jurisdiction at this

time. Plaintiff has expressed a desire for the Court to order the United States to pursue immediately any jurisdictional defenses that it has. First, Plaintiff bears the burden of proof with respect to jurisdiction, not the United States. Second, the United States has no desire to burden the Court with piecemeal motions and intends to pursue a dispositive motion expeditiously. The United States will endeavor to include all issues that are ripe for adjudication by the Court in that motion. Third, no party can waive jurisdiction. Fourth, courts must, and routinely do, address jurisdictional questions at any point in the litigation, including on appeal. As such, the United States sees no benefit and no basis in the rules to arbitrarily demand that the United States address this issue by separate motion or on some other expedited basis.

**B. Consolidation of Case:**

The parties agree that this case is not a candidate for consolidation.

**C. Bifurcated Trial:**

The parties agree that the trial should be bifurcated into liability and damages.

**D. Transfer and Deferral of Proceedings:**

The parties agree that no basis exists for transferring this case to another tribunal and are not aware of any related cases. The parties agree that the proceedings should not be deferred because of another pending case.

**E. Remand and Suspension:**

The parties agree that remand and suspension will not be sought.

**F. Joinder of Parties:**

The parties do not anticipate the joinder of any additional parties at this time.

**G. Motions:**

Plaintiff's Statement

Plaintiff has suggested (in Paragraph A above) that the Court require Defendant to come forward within ten (10) days with a brief explaining any jurisdictional objections reasonably available to it at this time. Plaintiff further suggests that she file and serve her opposition to any such jurisdictional objections within forty-five days after service of Defendant's brief, and that Defendant file and serve its reply in support of its jurisdictional objections within thirty (30) days after service of Plaintiff's opposition. (Plaintiff reserves the right to seek changes to this schedule in the event she concludes that any discovery is needed to prepare her opposition.)

Plaintiff has generally agreed to the discussion below of a schedule for dispositive motion proposed by Defendant. Nevertheless, Plaintiff believes that the outcome of this suggestion on jurisdictional objections may make it appropriate to alter the schedule below. Accordingly, Plaintiff suggests that it will be appropriate to discuss the possibility of such alterations at the status conference.

Defendant's Statement

As set forth above, the United States does not see any basis or benefit to piecemeal motions practice. Thus, the United States believes that the following schedule – without the additional jurisdictional layer requested by Plaintiff – is appropriate and should be adopted by the Court.

Joint Statement

The United States has indicated its desire to pursue a dispositive motion prior to discovery, which, if successful, would resolve the case ("Defendant's Motion"). Plaintiff

has indicated her belief that, because the United States intends to submit affidavits in support of its motion, she will need discovery in order to prepare her opposition to the Defendant's Motion. Without waiving any of their rights with respect to discovery, the parties have generally agreed to the following schedule for the filing of Defendant's Motion:

- **May 22, 2006**: The United States will file and serve its dispositive motion on the ground that Plaintiff has failed to state a claim upon which relief can be granted because the complaint does not contain a sufficient factual or legal basis to establish that the United States caused the alleged taking, since the United States submits that it had no role in the removal of Plaintiff's business property.

- **Sixty (60) days after the service of the United States' dispositive motion:** Plaintiff will either (i) file and serve an Opposition to Defendant's Motion or (ii) demand discovery she considers appropriate to oppose Defendant's Motion. The United States reserves its right to object to any discovery so requested. At the time that Plaintiff files her Opposition to Defendant's Motion, she may also file a Cross-motion for judgment on the pleadings and/or summary judgment (full or partial).

    - The parties have not agreed on the schedule for Plaintiff's Opposition in the event that Plaintiff demands discovery she considers appropriate to oppose Defendant's Motion.

    - In this event, Plaintiff requests that her time to oppose Defendant's Motion will be enlarged until forty-five (45) days after the completion of discovery.

    - If Plaintiff files a request for discovery in response to the United States' dispositive motion, the United States believes that the parties should then request a status conference with the Court, after consultation between the parties, to set a schedule to complete the discovery necessary for the resolution of the dispositive motion. The Court can simultaneously address the timing for completion of the briefing on the United States' dispositive motion.

- **Thirty (30) days after the service of Plaintiff's Opposition and Cross-motion (if any)**: The United States will file and serve its Reply in support of Defendant's Motion and its Opposition to Plaintiff's Cross-motion (if any).

- **Fifteen (15) days after service of Defendant's Reply in support of Defendant's Motion and Opposition to Plaintiff's Cross-motion (if any):** Plaintiff will file and serve her Reply in support of Plaintiff's Cross-motion (if any).

The parties agree that the foregoing schedule is without prejudice to the parties' rights to file motions for summary judgment (full or partial) at the close of any discovery ultimately conducted in this case.

**H. Material Factual and Legal Issues:**

The parties submit the following statements with respect to the factual and legal issues related to this case:

Plaintiff's Statement

Plaintiff is a citizen of Uzbekistan and she resides in Tashkent, which is the capital of Uzbekistan. Plaintiff became the sole owner of a cafeteria called Feruza in 1994. Feruza was located on property adjacent to the U.S. Embassy in Tashkent at that time (the "Embassy").

On or about December 20, 1999, the Embassy made an express verbal "demand" that the local authorities in Tashkent demolish Feruza within three days "for the sake of the security of the US Embassy." On or about December 23, 1999, the local authorities expelled Plaintiff from Feruza and demolished Feruza. Officials from the Embassy were physically present at and oversaw the demolition of Feruza. The property where Feruza had been located contained a security checkpoint for the Embassy, constructed in part from the remains of Feruza, which was manned by armed Uzbek soldiers.

The Embassy's action was taken during and as part of a major initiative by the State Department to improve security at U.S. embassies around the world. The initiative began in or about August 1998 – when terrorists bombed the U.S. embassies in Kenya

and Tanzania – and continued well past the demolition of Feruza in December 1999. In fact, on November 29, 1999 – just weeks before the demolition of Feruza – President Clinton signed into law the Secure Embassy Construction and Counterterrorism Act, 22 U.S.C. § 4865 nt., Pub. L. No. 106-113 (1999). This act authorized $4.6 billion to be spent over five years by the State Department to improve security at diplomatic facilities by, among other things, acquiring "if necessary, any residences or other structures located in close physical proximity to such facilities."

The embassy security initiative emphasized those countries where U.S. interests were facing "medium" or "high" security risks and, therefore, were regarded as "most vulnerable." Uzbekistan presents severe terrorist risks to U.S. interests. The State Department (upon information and belief) first added a terrorism warning to its "consular information sheet" for Americans traveling to Uzbekistan in September 1999, just three months before the demolition of Feruza. The State Department recognized in 1999 that the Embassy was at risk of terrorist attack, and implemented numerous measures to increase the security of the Embassy's physical plant and its personnel.

At and around the time of the demolition of Feruza, the U.S. and Uzbek governments were extremely close and the Uzbek government was highly dependent on the U.S. government for military and economic aid. This aid was critical to Uzbekistan's internal and external security and made Uzbekistan unable to resist U.S. demands to demolish Feruza to improve the security of the Embassy.

Plaintiff has received no compensation for the taking of her cafeteria. The Embassy denied her requests for compensation. Likewise, the local authorities in Tashkent denied her request for compensation – implying that responsibility for

compensation lay with the United States because their actions were done "for the security of the Embassy."

The questions presented by this case are:

1. Did the United States compel, demand, direct, or order governmental authorities in Uzbekistan to evict Plaintiff from Feruza and/or to demolish Feruza?

2. Did the United States benefit from the eviction of Plaintiff from Feruza and/or the demolition of Feruza?

3. What is the amount of compensation due to Plaintiff?

Defendant's Statement

Plaintiff admits that her business establishment was removed by the Uzbek authorities, not by the United States. Her entire claim rests on the supposition that the Government of Uzbekistan was acting pursuant to an "order" of the United States when it removed the business facility. The only relevant factual issue, therefore, is whether the United States "ordered" the removal of Plaintiff's business facility. Currently, Plaintiff has failed to plead, much less prove, that any specific official of the United States while acting within the scope of their authority ordered the removal of Plaintiff's business. Indeed, the only evidence is that no one from the United States Embassy – acting on behalf of the United States, or otherwise – requested, let alone ordered, that Plaintiff's business establishment be removed.

At this time, the relevant legal issues appear to include:

1. Whether the United States could, as a matter of law, "order" the Uzbek Government to remove Plaintiff's business establishment?

2. Assuming arguendo that the United States could order the removal of Plaintiff's business establishment, does such an order constitute a taking?

3. In the event the Court finds that a taking occurred, what is the amount of compensation due to Plaintiff?

The United States believes that the first two issues can be readily resolved through dispositive motions and that the Court will ultimately not need to address the final issue because the Court is unlikely to make a finding of liability in Plaintiff's favor.

**I. Settlement and Alternative Dispute Resolution:**

Plaintiff's Statement

Plaintiff believes the costs of international litigation (including but not limited to the costs of litigating the dispositive motion proposed by Defendant) are high in comparison with the amount in dispute. Accordingly, Plaintiff submits that this case is appropriate for alternative dispute resolution and believes a settlement judge is the most appropriate form of alternative dispute resolution.

Defendant's Statement

Given that the United States believes that there is a high probability that this case can be resolved expeditiously on dispositive motions, the United States does not believe that this case is an appropriate candidate for alternative dispute resolution at this time.

**J. Pre-Trial Schedule Issues:**

Plaintiff's counsel has indicated that Plaintiff will seek discovery of information that is likely to constitute classified information. The United States anticipates that it will object to such discovery. Plaintiff has requested that the United States commence the process to secure the appropriate security clearances for Plaintiff's counsel to avoid delays in starting discovery, and she expects this will be necessary to prepare her opposition to Defendant's Motion. The United States has denied Plaintiff's request, on

the ground that the process for approving security clearances involves a substantial commitment of manpower and money, so the United States believes that it is more prudent to pursue such clearance procedures only once it becomes clear that the Court has, in fact, approved such discovery. In the event Plaintiff seeks information subject to security clearance and the Court allows such production, the United States may request a protective order limiting Plaintiff's use of such information.

The parties agree that resolution of other pretrial scheduling matters is not necessary or appropriate at this time due to Defendant's dispositive motion discussed above in section H.

**K. Electronic Case Management:**

The parties are not aware of any electronic case management issues at this time.

**L. Other Matters / Initial Disclosures under RCFC 26(a):**

The parties have agreed to complete the exchange of their initial disclosures by Friday, April 14, 2006.

**M. Joint Preliminary Status Conference Availability:**

The parties agree that they are available to attend a joint preliminary status conference with the Court on April 24, 25, and 26, 2006.

**N. Appendices:**

Absent a clear understanding of the phrase "statutes, regulations, and subregulatory guidance," Plaintiff considers it appropriate to provide the Court with a number of State Department materials she considers relevant to her case. The United States does not object to the inclusion of these materials in the Appendices, without agreeing that all of them constitute "statutes, regulations, and subregulatory guidance."

Dated April 7, 2006
Washington, D.C.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Acting Assistant Attorney General
Environment and Natural Resources Division

Perry S. Bechky
Christopher M. Ryan
Wesley J. Heath

SHEARMAN & STERLING LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 505-8000
(202) 508-8100 (Fax)
*Attorneys for Zoya Atamirzayeva*

James D. Gette
Trial Attorney

Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-1461
(202) 305-0506 (Fax)
*Attorney for the United States*