**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ZOYA ATAMIRZAYEVA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 02-951 L |
| | ) | Honorable Edward J. Damich |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**UNITED STATES' MOTION FOR JUDGMENT ON THE PLEADINGS AND SUPPORTING MEMORANDUM**

Pursuant to RCFC 12(b)(6), RCFC 12(c), and the Court's April 26 and June 13, 2006, Orders, the United States moves to dismiss the Complaint, in its entirety, for failure to state a claim upon which relief can be granted. As a foreign citizen with no substantial connection with the United States, Plaintiff lacks standing to bring this suit. A detailed memorandum in support of this motion follows.[1/]

[1/]On June 5, 2006, the United States filed a Motion for Judgment on the Pleadings seeking to dismiss this case because (1) Plaintiff lacks standing and (2) the United States cannot be liable for actions of a foreign sovereign. On June 15, 2006 – pursuant to the June 13, 2006 status conference and the Court's order of the same date – the United States moved to withdraw without prejudice the June 5, 2006 Motion for Judgment on the Pleadings and Supporting Memorandum. By Order dated June 15, 2006, the Court granted the United States' Motion to Withdraw Without Prejudice. In the unlikely event the Court fails to dismiss this case based solely on Plaintiff's lack of standing, as set forth in the instant motion, the United States reserves its right to pursue a motion for judgment on the pleadings on the ground that the United States cannot be liable for acts of a foreign sovereign.

**TABLE OF CONTENTS**


Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. STANDARD OF REVIEW: JUDGMENT ON THE PLEADINGS IS PROPER BECAUSE THE ONLY ISSUE TO BE DECIDED IS A LEGAL ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV. ARGUMENT: PLAINTIFF LACKS STANDING TO SUE THE UNITED STATES FOR AN ALLEGED VIOLATION OF THE FIFTH AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES

### CASES

Ashkir v. United States,
46 Fed.Cl. 438 (2000) . . . . . . . . . . 3, 8

Berlin Democratic Club v. Rumsfeld,
410 F.Supp. 144 (D.D.C. 1976) . . . . . . . . . . 8

Cannon v. City of W. Palm Beach,
250 F.3d 1299 (11th Cir. 2001) . . . . . . . . . . 2

Casa de Cambio v. United States,
291 F.2d 1356 (Fed.Cl. 2002) . . . . . . . . . . 6

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . 3

El-Shifa Pharmaceutical v. United States,
378 F.3d 1346 (Fed. Cir. 2004) . . . . . . . . . . 5, 6

Erosion Victims of Lake Superior Regulation v. United States,
833 F.2d 297 (Fed. Cir. 1987) . . . . . . . . . . 6

Johnson v. Eisenstrager,
339 U.S. 763 (1950) . . . . . . . . . . 4

Langenegger v. United States,
756 F.2d 1565 (Fed. Cir.), cert. denied, 474 U.S. 824 (1985) . . . . . . . . . . 4, 6

New Zealand Lamb Co., Inc. v. United States,
40 F.3d 377 (Fed. Cir. 1994) . . . . . . . . . . 2

Peterson v. United States,
68 Fed.Cl. 773 (2005) . . . . . . . . . . 2

Russian Volunteer Fleet v. United States,
282 U.S. 481 (1931) . . . . . . . . . . 4

Turney v. United States,
115 F. Supp. 457 (Ct. Cl. 1953) . . . . . . . . . . 5, 6, 7

United States v. Verdugo-Urquidez,
494 U.S. 259 (1990) . . . . . . . . . . 3, 4

**RULES**

RCFC 12(b)(1) . . . . . . . . . . 3
RCFC 12(b)(6) . . . . . . . . . . 1, 3
RCFC 12(c) . . . . . . . . . . 2

**OTHER AUTHORITIES**

C. Wright & A. Miller, Fed. Prac. & Proc. Civ. 3d § 1367 . . . . . . . . . . 2

## MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR JUDGMENT ON THE PLEADINGS

### I. INTRODUCTION

Plaintiff's Complaint alleges that she owned an establishment known as Café Feruza, which was located adjacent to the United States Embassy in Tashkent, Uzbekistan. In December 1999, Café Feruza was demolished by "local authorities in Tashkent." Complaint ¶ 16. Plaintiff further alleges that the demolition was pursuant to a "demand" made by the United States and was for the benefit of the security of the United States Embassy. Even assuming the allegations as plead by Plaintiff, however, the Complaint should be dismissed as a matter of law.

In addition to the above allegations, Plaintiff admits that she is a foreign citizen and that she is attempting to invoke the Takings Clause of the Fifth Amendment to obtain remuneration for the alleged destruction of property located outside of the United States. Because Plaintiff is a foreign citizen, whose property is located outside the United States, and neither the Plaintiff nor the property have substantial connections with the United States, she may not avail herself of the protections of the Fifth Amendment. As such, she lacks standing to bring this suit, which should be dismissed in its entirety pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.

### II. FACTUAL BACKGROUND

There are truly only a handful of facts that are material to the resolution of the instant motion to dismiss and, in each case, they are taken directly from Plaintiff's Complaint. The United States will assume the truth of these allegations, as necessary, for purposes of this

motion. Thus, there are not factual disagreements to prevent this Court from granting the instant motion.

The material facts are as follows: (1) Plaintiff is "a citizen of the Republic of Uzbekistan." Complaint ¶¶ 1 and 3. (2) Plaintiff was the "owner of a cafeteria called Feruza" ("Café Feruza"), which "was located on property adjacent to the U.S. Embassy in Tashkent, Uzbekistan." Id. ¶¶ 5 and 6. (3) In December 1999, "the local authorities in Tashkent forcibly expelled [Plaintiff] from [Café] Feruza. They seized the property, and destroyed the cafeteria." Id. ¶ 16. (4) Plaintiff's Complaint pleads no connections between Plaintiff and the United States.[2/]

## III. STANDARD OF REVIEW: JUDGMENT ON THE PLEADINGS IS PROPER BECAUSE THE ONLY ISSUE TO BE DECIDED IS A LEGAL ISSUE

Pursuant to RCFC 12(c), which is identical to Federal Rule of Civil Procedure 12(c), "[j]udgment on the pleadings . . . is appropriate where there are no material facts in dispute and the [moving party] is entitled to judgment as a matter of law." New Zealand Lamb Co., Inc. v. United States, 40 F.3d 377, 380 (Fed. Cir. 1994); Cannon v. City of W. Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001). "The legal standard applied to evaluate a motion for judgment on the pleadings is the same as that for a motion to dismiss." Peterson v. United States, 68 Fed.Cl. 773, 776 (2005); C. Wright & A. Miller, Fed. Prac. & Proc. Civ.3d § 1367. A motion for

[2/]The United States assumes the truth of these facts, as necessary, for purposes of presenting each of its arguments below. The United States does not, however, concede these facts and may offer contrary evidence if the instant motion is unsuccessful and the case proceeds to either a motion for summary judgment or to trial. For example, based upon the current Complaint, the United States lacks the information necessary to determine the truth of Plaintiff's alleged ownership interest in Café Feruza.

judgment on the pleadings may be granted if it appears that Plaintiff can prove no facts that would entitle her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). While a complaint should be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle the plaintiff to relief, the Court is not required to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. Id.

In the instant case, for purpose of this motion, the United States accepts all of the material facts plead by Plaintiff. Even assuming the validity of the material facts as plead by Plaintiff, however, the United States is still entitled to judgment as a matter of law because Plaintiff lacks standing. As such, she has failed to state a claim upon which relief can be granted.

## IV. ARGUMENT: PLAINTIFF LACKS STANDING TO SUE THE UNITED STATES FOR AN ALLEGED VIOLATION OF THE FIFTH AMENDMENT

As a foreign citizen who has no substantial connections with the United States, Plaintiff may not invoke the protections of the Fifth Amendment and, therefore, lacks standing to bring this suit.[3/] The Supreme Court has "rejected the claim that aliens are entitled to rights outside the sovereign territory of the United States." United States v. Verdugo-Urquidez, 494 U.S. 259, 269 (1990) (Supreme Court held that the Fourth Amendment protection against warrantless searches does not apply to a search of a Mexican citizen's home in Mexico by American agents). In some

[3/] As recognized by Judge Allegra in Ashkir v. United States, the precedent is somewhat unclear regarding whether a standing argument is properly asserted under RCFC 12(b)(1) for lack of subject matter jurisdiction or 12(b)(6) for failure to state a claim. Nonetheless, as Judge Allegra concluded, the analysis of a standing defense is the same under either provision of the rules. 46 Fed. Cl. 438, 439 (2000).

limited circumstances, the Supreme Court has suggested that an alien located outside the territory of the United States could avail themselves of the protections of the Fifth Amendment, but only "when they have . . . developed **substantial connections** with [the United States]." Id. at 271 (emphasis added); Johnson v. Eisenstrager, 339 U.S. 763 (1950) (the Court ruled that writs of habeus corpus under the Fifth Amendment are not available to aliens arrested in China and imprisoned in Germany following World War II). The Verdugo-Urquidez Court characterized the Johnson Court's rejection of the "extraterritorial application of the Fifth Amendment [as] emphatic." Quoting at length from Johnson, the Verdugo-Urquidez Court stated that a finding of universal extraterritoriality:

> would [be] so significant an innovation in the practice of governments that, if intended or apprehended, it could scarcely have failed to excite contemporary comment. Not one word can be cited. No decision of this Court supports such a view. None of the learned commentators on our Constitution have even hinted at it. The practice of every modern government is opposed to it.

Verdugo-Urquidez, 494 U.S. at 269 (citations omitted) (quoting Johnson, 339 U.S. at 784).

This reading of the Supreme Court's prior decisions – requiring "substantial connections" with the United States in order to demonstrate standing – is unexceptional, and is consistent with takings jurisprudence. For example, the Supreme Court has applied the Takings Clause to foreign-owned property located within the United States, which is by itself a substantial connection. See Russian Volunteer Fleet v. United States, 282 U.S. 481, 491-92 (1931). Courts have also ruled that foreign property owned by United States citizens is likewise protected by the Constitution, the citizenship of the plaintiff creating the necessary substantial connection. See, Langenegger v. United States, 756 F.2d 1565, 1570 (Fed. Cir.), cert. denied, 474 U.S. 824

(1985). In the instant case, Plaintiff is neither a United States citizen nor is her alleged property located within the United States.

Plaintiff will undoubtedly cite to the Federal Circuit's recent holding in El-Shifa Pharmaceutical v. United States and argue that the ruling in that case stands "for the proposition that the Takings Clause protects the property interests of nonresident aliens located abroad even where there is no demonstrable connection between them or their property and the United States." 378 F.3d 1346, 1352 (Fed. Cir. 2004). In El Shifa, the plaintiffs owned a pharmaceutical plant in Khartoum, Sudan. In 1998, as part of a retaliatory strike against terrorist-related facilities, United States missiles destroyed the pharmaceutical plant. The Federal Circuit upheld the trial court's dismissal of the plaintiffs' Takings Claim because the President's designation of the plaintiffs' plant as enemy property presented a "nonjusticiable political question." Id. at 1362.

Relying upon Turney v. United States, 115 F. Supp. 457 (Ct. Cl. 1953), the plaintiff in El-Shifa urged the Federal Circuit to find that a nonresident alien can seek remuneration under the Takings Clause for property situated in a foreign country. Despite this invitation by the plaintiff in El-Shifa, however, the Federal Circuit refused to issue such a ruling. The court found that "because we think the appellants' taking claim at bottom presents a nonjusticiable political question, we are not required to explore whether Turney enjoys any continuing vitality after Verdugo-Urquidez in order to affirm the decision on appeal." Thus, the Federal Circuit

ultimately refused to rule on the issue of standing in El-Shifa, and its discussion of the issue is mere dicta.[4]

This Court should also note that the Turney decision does not present as stark a contrast to the rule of Verdugo-Urquidez and Johnson as was urged by the plaintiff in El-Shifa. In Turney, unlike the instant case, there were substantial connections between the United States and both the property and the property's owner. The property at issue was surplus United States Army classified military radar equipment which was inadvertently sold to the buyer as part of a transaction to raise money for the Philippine Government. Turney, 115 F. Supp. at 458-59. The United States ultimately re-took possession of the equipment when the United States Army "repossessed" it from the buyers.[5] Id. at 463. The initial sale of the equipment was managed by

---

[4] Even if El-Shifa had reached the standing issue, it is important to note that El-Shifa, like Turney, is factually distinct from the instant case. In El Shifa the government was the party allegedly responsible for the bombings which destroyed the plaintiffs' property. 378 F.3d at 1349. Here, both the United States and the Plaintiff agree that the destruction of Café Feruza was carried out by "local authorities in Tashkent," not the United States. See Complaint ¶ 1.

[5] This important distinction in Turney has similarly been noted in a long line of cases addressing the issue of whether the actions of a foreign sovereign can be imputed to the United States in the context of an alleged Fifth Amendment Taking. In those cases, the courts were determining whether plaintiffs had alleged "facts showing that the United States had a pervasive influence over [a foreign sovereign]." Erosion Victims of Lake Superior Regulation v. United States, 833 F.2d 297, 300 (Fed. Cir. 1987). The cases noted that "[i]n only one case, from [the] predecessor court, Turney v. United States, 126 Ct. Cl. 202, 115 F. Supp. 457 (1953), did [the court] find the government's action towards a third-party to have a direct and substantial enough effect on the plaintiff to require compensation under the Takings Clause ." Casa de Cambio v. United States, 291 F.2d 1356, 1362 (Fed.Cl. 2002). The Cambio court, however, found that Turney did not preclude the conclusion that "where expropriation by foreign sovereign occurred, there was no Fifth Amendment taking by United States even though the United States engaged in 'friendly' persuasion of the foreign sovereign to engage in the expropriation." Id., (quoting Langenegger, 756 F.2d at 1572). The Cambio court concluded that the Turney decision was distinguishable because the United States Army actually took possession of the radar equipment at issue. Turney, 115 F. Supp. at 464. As the court in Turney found, "[w]e think that the taking occurred . . . when the [U.S.] Army officially took **possession of the property**." Id. (emphasis added).

the United States on behalf of the Philippine government, which never actually took possession of the equipment. Id. at 458-63. The sales contract named the United States as the seller and two former United States Air Force members, both American citizens, as the buyers (they later assigned their interest in the material to the corporation). Id. at 459. The Philippine corporation to which the equipment was ultimately transferred, was formed principally by the two former American Air Force officers. Id. During the course of the conflict over the equipment, a second agreement was executed between the corporation and the United States Army, in which the corporation agreed to return the equipment to the United States Government in return for a receipt identifying the equipment returned. This second agreement included a statement of the corporation's intent to make a claim against the United States for the equipment that was repossessed. Id. at 460. Before any takings claim was brought, the corporation was liquidated, and the eventual claimant was Edward Turney, who was named as liquidator of the corporation's assets. Id. at 461.

Thus, Turney involved circumstances in which the property at issue had been owned by the United States Government, was sold by the United States to United States citizens, and was the subject of a second agreement between the corporation and the United States for the return of certain equipment. In this situation, the best reading of Turney, in light of the Supreme Court's clear holdings concerning extraterritorial application of the Fifth Amendment, is that there was in fact a sufficient connection to the United States to make the Takings Clause applicable in that case.

No such similarly compelling connections between the United States and either Café Feruza or the Plaintiff have been alleged in this case. Indeed, there are no connections between

the United States and either the property or the Plaintiff. The property is located in Uzbekistan. Complaint ¶¶ 5-6. The United States never took possession of the property and, as confirmed by Plaintiff, did not commit the acts leading to the destruction of the property. Id. ¶ 16. Plaintiff is not an American citizen; she did not buy the property from the United States nor has she entered into any contract with the United States relative to the property. Id. ¶¶ 1 & 3.

Moreover, in Turney, the expropriated property was in the hands of the United States following the taking. With the property at issue in the hands of the United States, a foreign sovereign in relation to the Philippine government, the plaintiff would have been unable to seek remuneration for the property in Philippine courts. No such dilemma faces the Plaintiff in the instant case where she could avail herself of the laws and courts of her own country to seek remuneration from the Government of Uzbekistan, which Plaintiff admits undertook the demolition of Café Feruza. See Berlin Democratic Club v. Rumsfeld, 410 F.Supp. 144, 153 (D.D.C. 1976) (Austrian citizen found to lack standing to sue the United States for violations of the Fourth Amendment, in part, because a foreign citizen "can utilize the laws of his own country to protect himself").

The instant case, in fact, should be resolved exactly as this Court resolved Ashkir v. United States, 46 Fed.Cl. 438 (2000). In Ashkir the plaintiff was a Somali citizen who owned a compound in Mogadishu that included "a hotel, apartment buildings, villas, sports facilities, restaurants, factory space, warehouses, and independent electric and water services." Id. at 439. As part of the United Nations' efforts in Somalia in 1992, the United States military inhabited the compound and used it as a headquarters for peacekeeping forces. Id. Based upon a careful analysis of Johnson, Verdugo-Urquidez, and numerous takings cases, this Court found that the

plaintiff lacked the substantial connections required for standing to invoke the Constitutional protection of the Fifth Amendment. The Court concluded that:

> In the instant case, the plaintiff is a nonresident alien and the property in question is in Somalia and thereby outside the sovereign jurisdiction of the United States. As such, it is apparent that neither the plaintiff nor his property possess the requisite substantial connection with the United States that would allow for his invocation of the Takings Clause.

Id. at 444.

The facts in the instant case more fully support dismissal than in Ashkir. In that case, the United States military physically occupied the plaintiff's foreign property. Conversely, in the instant case, Plaintiff admits that the United States did not destroy or take possession of her property.

In short, an alien plaintiff whose property is located outside the United States lacks standing to bring a claim under the Fifth Amendment's Takings Clause unless they can demonstrate substantial connections with the United States. In only one case in its history, Turney, a case with very unique facts, has the Federal Circuit, or its predecessor court found such a substantial connection. Because none of the unique facts present in that case are present here and there are, in fact, no connections between the Plaintiff and the United States, the instant case must be dismissed. Based upon the facts contained in Plaintiff's Complaint, the Court must find, as a matter of law, that Plaintiff has failed to plead the "substantial connections" required by the Supreme Court to confer standing on a plaintiff to invoke the protection of the Takings Clause of the Fifth Amendment. As such, the Court, we respectfully submit, must dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

## V. CONCLUSION

Because Plaintiff lacks standing to prosecute this case, as more fully set forth above, the United States respectfully requests that the Court grant its Motion and dismiss this case in its entirety for failure to state a claim upon which relief can be granted.

June 16, 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

/s/ James D. Gette

JAMES D. GETTE
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044
(202) 305-1461

Of counsel:
Emily E. Daughtry, Attorney-Adviser
Office of the Legal Adviser
United States Department of State
2430 E Street, NW
Suite 203, South Building
Washington, DC 20037-2800
(202) 776-8436