**IN THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ZOYA ATAMIRZAYEVA,** | ) | |
| **Plaintiff,** | ) | **No. 05-1245 L** |
| **v.** | ) | **Honorable Edward J. Damich** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | **Oral Argument Requested** |

**PLAINTIFF ZOYA ATAMIRZAYEVA'S OPPOSITION TO THE UNITED STATES' MOTION FOR JUDGMENT ON THE PLEADINGS**

Perry S. Bechky
Christopher M. Ryan
Wesley J. Heath

SHEARMAN & STERLING LLP
801 Pennsylvania Avenue, N.W.
Suite 900
Washington, D.C. 20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ISSUE PRESENTED ........ 2

LEGAL STANDARD ........ 3

STATEMENT OF THE CASE ........ 3

ARGUMENT ........ 4

A. Plaintiff Has Standing to Bring This Claim under the Just Compensation Clause of the Fifth Amendment ........ 4

B. The Motion Misstates the Law Concerning the Right of an Alien Friend to Bring a Claim for Just Compensation ........ 8

1. *Eisentrager's* Holding is Expressly Limited to Alien Enemies and Has No Application to Alien Friends ........ 8

2. *Verdugo-Urquidez's* Holding is Expressly Limited to the Fourth Amendment and Has No Application to the Just Compensation Clause ........ 10

C. The Government Improperly Invites This Court to Rewrite the Controlling Law by Imposing a New "Substantial Connections" Requirement ........ 13

CONCLUSION ........ 17

Appendix of Exhibits

Excerpt of Plaintiff's Reply Brief, *Turney v. United States*, May 27, 1953 ........ Exhibit 1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Armstrong v. United States*, 364 U.S. 40 (1969) ....................4

*Ashkir v. United States*, 46 Fed. Cl. 438 (Fed. Cl. 2000)....................15, 16

*Atlas Corp. v. United States*, 895 F.2d 745 (Fed. Cir. 1990)....................3

*Brunell v. United States*, 77 F. Supp. 68 (S.D.N.Y. 1948) ....................7

*Callas v. United States*, 253 F.2d 838 (2d Cir. 1958)....................7

*Case of Wiggins*, 3 Ct. Cl. 412, 1800 WL 594 (Ct. Cl. 1867) ....................5

*El-Shifa Pharmaceutical Industries Co v. United States*, 55 Fed. Cl. 751 (Fed. Cl. 2003), *affirmed*, *El-Shifa Pharmaceutical Industries Co. v. United States*, 378 F.3d 1346 (Fed. Cir. 2004).................... *passim*

*Fleming v. United States*, 352 F.2d 533 (Cl. Ct. 1965)....................6

*Johnson v. Eisentrager*, 339 U.S. 763 (1950).................... *passim*

*Juda v. United States*, 6 Cl. Ct. 441 (Cl. Ct. 1984)....................6, 7

*Langenegger v. United States*, 756 F.2d 1565 (Fed. Cir. 1985) ....................4, 12

*Nitol v. United States*, 7 Cl. Ct. 405 (Cl. Ct. 1985)....................6

*Porter v. United States*, 496 F.2d 583 (Cl. Ct. 1974) ....................6, 7

*Rasul v. Bush*, 542 U.S. 466 (2004)....................8, 11

*Reid v. Covert*, 354 U.S. 1 (1957)....................6, 11, 12

*Rodriguez de Quinjas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989)....................15

*Russian Volunteer Fleet v. United States*, 282 U.S. 481 (1931)....................5

*Seery v. United States*, 127 F. Supp. 601 (Ct. Cl. 1955)....................5, 13

*South Corp. v. United States*, 690 F.2d 1368 (Fed. Cir. 1982)....................6

*Turney v. United States*, 115 F. Supp. 457 (Ct. Cl. 1953) .................... *passim*

*United States v. Tiede*, 86 F.R.D. 227 (U.S. Ct. Berlin 1979) ................................................10, 11

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990).................................................... *passim*

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. V..........................................................................................................4

**FEDERAL STATUTES**

Federal Tort Claims Act, 28 U.S.C. § 2680(k) ....................................................................7

**OTHER**

Lori F. Damrosch, et al., International Law: Cases and Materials 283 (4th ed. 2001)....................7

Joseph Story, II Commentaries on the Constitution of the United States§ 1790 (5th ed. 1891) (Wm. S. Hein & Co. reprint 1994) ......................................................................4

**IN THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ZOYA ATAMIRZAYEVA,** | ) | |
| **Plaintiff,** | ) | **No. 05-1245 L** |
| **v.** | ) | **Honorable Edward J. Damich** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | **Oral Argument Requested** |

**PLAINTIFF ZOYA ATAMIRZAYEVA'S OPPOSITION TO THE UNITED STATES' MOTION FOR JUDGMENT ON THE PLEADINGS**

For the reasons discussed below, Plaintiff Mrs. Zoya Atamirzayeva opposes the United States' Motion for Judgment on the Pleadings (the "Motion" or "Gov. Mot.").

## INTRODUCTION

Mrs. Atamirzayeva seeks Just Compensation from the United States (the "Government") for its taking of her property. Mrs. Atamirzayeva is an "alien friend" whose property was located abroad.

The Motion raises only one ground for dismissal: absent "substantial connections" with the United States, the Government owes no duty of compensation whatsoever when it takes property located abroad from an alien. This argument cannot be reconciled with the binding law in this Circuit. A number of decisions by the United States Court of Claims, which have been adopted as controlling precedents by the *en banc* Federal Circuit, have applied the Just Compensation Clause to takings of property located outside the United States and owned by aliens.

The Motion addresses only one of these precedents, *Turney v. United States*. The Motion asks this Court to change the controlling legal standard by importing into Just Compensation jurisprudence a "substantial connections" requirement relevant to the Warrants Clause of the Fourth Amendment. However, most of the cases cited by the Government are readily distinguishable; they provide no support for the Government's position and their reasoning actually undermines that position. Only one case cited in the Motion, *Ashkir v. United States*, held the "substantial connections" requirement applicable to the Just Compensation Clause. That decision, however, was repudiated by both the Federal Circuit and this Court in *El-Shifa Pharmaceuticals v. United States.*

Indeed, in *El-Shifa*, the Federal Circuit expressly rejected an effort by the Government to overrule *Turney* and import the "substantial connections" requirement into the Just Compensation Clause. The present Motion is no more than a re-labeled version of the effort that the Government already litigated and lost in *El-Shifa*.

The Motion therefore fails to provide any reason for this Court to depart from the established rule in this Circuit, which allows property owners to seek Just Compensation when the Government takes their property regardless of the property's location or the owner's nationality. The Motion, respectfully, must be denied.

## <u>ISSUE PRESENTED</u>

Whether Mrs. Atamirzayeva, a citizen of Uzbekistan, has standing to bring suit against the Government for compensation under the Just Compensation Clause of the Fifth Amendment for the Government's taking of her property located in Uzbekistan.

## LEGAL STANDARD

On a "motion for judgment on the pleadings, each of the well-pleaded allegations in the complaints is assumed to be correct, and the court must indulge all reasonable inferences in favor of the plaintiffs." *Atlas Corp. v. United States*, 895 F.2d 745, 749 (Fed. Cir. 1990).

## STATEMENT OF THE CASE

Mrs. Atamirzayeva is a citizen of Uzbekistan and a resident of the city of Tashkent, Uzbekistan. Complaint ¶ 1. Uzbekistan is at peace with the United States. Id. ¶¶ 18-22.

Mrs. Atamirzayeva was the sole owner of a profitable cafeteria named Feruza, which was located on property adjacent to the U.S. Embassy in Tashkent, Uzbekistan (the "Embassy"). Id. ¶¶ 5-7.

On or about December 20, 1999, the Government made an express verbal "demand" that the local authorities in Tashkent destroy Feruza within three days "for the sake of the security of the U.S. Embassy." Id. ¶ 15. On or about December 23, 1999, the local authorities in Tashkent complied with this demand. Id. ¶ 16. They forcibly expelled Mrs. Atamirzayeva from Feruza, seized the property, and demolished the cafeteria. Id. ¶ 16. They acted at the demand of the Government and for its benefit, specifically "for the security improvements of the Embassy." Id. ¶¶ 16, 23. Officials from the Embassy were physically present at and oversaw the demolition of Feruza. Id. ¶ 16. [1]

---

[1] The Government claims that "[t]he United States … as confirmed by Plaintiff, did not commit the acts leading to the destruction of the property." Gov. Mot. at 8. This is incorrect. Mrs. Atamirzayeva has never "confirmed" the Government's position. To the contrary, the Complaint plainly alleges that the Government *did* commit acts leading to the destruction of Feruza – by making an "irresistible demand" of authorities subject to the Government's "pervasive influence." See, e.g., Complaint ¶ 18. This allegation must be accepted for purposes of the present Motion. *Atlas*, 895 F.2d at 749. In any event, "The United States may be held

(continued)

Mrs. Atamirzayeva has not received Just Compensation for the taking of her property. Id. ¶ 23.

## ARGUMENT

### A. PLAINTIFF HAS STANDING TO BRING THIS CLAIM UNDER THE JUST COMPENSATION CLAUSE OF THE FIFTH AMENDMENT

The Complaint is founded upon the Constitution's Just Compensation Clause, which provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

"The Just Compensation Clause was designed to 'bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Langenegger v. United States*, 756 F.2d 1565, 1570 (Fed. Cir. 1985) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1969)). Justice Story, for example, considered the Just Compensation Clause to be "an affirmance of a great doctrine established by the common law for the protection of private property . . . founded in natural equity, and . . . laid down by jurists as a principle of universal law." Joseph Story, II Commentaries on the Constitution of the United § 1790 (5th ed. 1891) (Wm. S. Hein & Co. reprint 1994). The facts here raise paradigmatic concerns at the historic core of the Just Compensation Clause: a property owner was left uncompensated when physically evicted from her property, which was seized for public use, forcing her to bear alone a burden that should be borne by the public as a whole.

---

responsible for a taking even when its action is not the final direct cause of the property loss or damage." *Langenegger v. United States*, 756 F.2d 1565, 1570 (Fed. Cir. 1985).

Alien friends have long enjoyed the right to Just Compensation, at least with respect to property located in the United States.[2] In *Russian Volunteer Fleet v. United States*, 282 U.S. 481 (1931), the Supreme Court held, "The petitioner was an alien friend, and *as such* was entitled to the protection of the Fifth Amendment," including in particular the Just Compensation Clause. Id. at 489 (emphasis added) (allowing a Russian corporation to bring a takings case).

Likewise, the Just Compensation Clause protects property located abroad. *Case of Wiggins*, 3 Ct. Cl. 412, 1800 WL 594 at *6-8 (Ct. Cl. 1867) (Nicaragua); accord *Seery v. United States*, 127 F. Supp. 601, 603 (Ct. Cl. 1955) (Austria).

Unsurprisingly, in light of these longstanding precedents, the Court of Claims held that an alien corporation was entitled to just compensation for the taking of property located in the Philippines. *Turney v. United States*, 115 F. Supp. 457 (Ct. Cl. 1953) (Madden, J.). In reaching this result, the Court of Claims expressly rejected the Government's cramped view of the Just Compensation Clause:

> The Government urges that the just compensation clause does not apply in foreign countries. [The plaintiff] urges that cases [denying certain constitutional protections to aliens] do not mean that other constitutional rights, such as the right to just compensation for property taken, which can, without inconvenience or practical difficulty, be applied to a taking abroad, should not be so applied.… We think the plaintiff's contention is sound.

Id. at 464. Four years later, to support a holding that the constitutional right to trial by jury applies to citizens located abroad, a plurality of the Supreme Court cited *Turney* as an example of the cases that "have held or asserted that various constitutional limitations apply to the

---

[2] An "alien enemy" is a national of a state at war with the United States, and an "alien friend" is a national of a state at peace with the United States. *Johnson v. Eisentrager*, 339 U.S. 763, 769 n.2 (1950).

Government when it acts outside the continental United States." *Reid v. Covert*, 354 U.S. 1, 8 n.10 (1957) (plurality opinion).

As a decision of the Court of Claims, *Turney* is "binding as precedent" in this Circuit. *South Corp. v. United States*, 690 F.2d 1368, 1369-71 (Fed. Cir. 1982) (*en banc*) (adopting decisions of the predecessor courts). Decisions of the Court of Claims may be overturned only by the Federal Circuit sitting *en banc*. Id. at 1370 n.2 ("The present adoption [of Court of Claims decisions as precedent in the Federal Circuit] does not affect the power of this court, sitting in banc, to overrule an earlier holding with appropriate explication of the factors compelling removal of that holding as precedent."). Importantly, the Federal Circuit invoked this rule to reject the Government's recent challenge to the ongoing vitality of *Turney*, holding that any such challenge could only be entertained by the full Court of Appeals sitting *en banc*. *El-Shifa Pharmaceutical Industries Co. v. United States*, 378 F.3d 1346, 1351 (Fed. Cir. 2004).

The Court of Claims also applied the Just Compensation Clause to alien friends with property abroad in a series of cases brought by citizens of the Pacific Islands Trust Territories (the "Trust Islands"). These *Trust Island* cases allowed aliens to invoke the Just Compensation Clause with respect to property located in the Trust Islands. See *Juda v. United States*, 6 Cl. Ct. 441, 455-58 (Cl. Ct. 1984) (holding that Trust Islands citizens could invoke the Just Compensation Clause for property located in the Trust Islands, and denying a motion to dismiss); *Nitol v. United States*, 7 Cl. Ct. 405, 415 (Cl. Ct. 1985) (same); *Porter v. United States*, 496 F.2d 583, 591 (Cl. Ct. 1974) (rejecting as "overly rigid" the Government's argument that the Just Compensation Clause does not apply to property outside the United States, and finding no taking by the Government); *Fleming v. United States*, 352 F.2d 533, 536-37 (Cl. Ct. 1965) (applying Just Compensation Clause analysis, and finding no taking by the Government). When the Court

of Claims decided the *Trust Islands* cases, the claimants were not citizens of the United States and their properties were not located in the United States.[3]

It is clear, therefore, that an alien friend like Mrs. Atamirzayeva has standing to bring a Just Compensation claim concerning the Government's taking of property located abroad.

[3] After World War II, the United Nations established a trusteeship system to provide for the administration of certain territories. The purpose of U.N. trusteeship was "to promote 'well-being and development' of the people and their eventual self-government or independence." Lori F. Damrosch, et al., International Law: Cases and Materials 283 (4th ed. 2001). Each trust territory was "administered by an administering authority" under an agreement between that authority and the United Nations which "provided for supervision by the United Nations Trusteeship Council." Id. Under this system, "*[t]hese territories did not become part of the territory of the administering power, nor did the inhabitants acquire the nationality of the administering state.*" Id. at 283-84 (emphasis added).

The Trust Islands, which had been "mandates" of Japan before the war, became trust territories administered by the United States under a trusteeship agreement with the United Nations. See *Juda*, 6 Cl. Ct. at 444. In keeping with the U.N. system, the Trust Islands were "not a territory of the United States, either incorporated or unincorporated." Id. at 457. "Inhabitants of the islands [were] citizens of the Territory, not of the United States." *Porter*, 496 F.2d at 588.

The United States expressly disavowed sovereignty over the Trust Islands. See id. A letter to the Attorney General from the Legal Adviser of the State Department about the status of Saipan, one of the Trust Islands, "concluded that *Saipan has not been and is not a part of the United States*, nor a territory or possession of the United States." The letter is reprinted in *Brunell v. United States*, 77 F. Supp. 68, 70 (S.D.N.Y. 1948) (emphasis added).

In *Brunell*, the Government successfully argued that Saipan was a "foreign country" within the "foreign country" exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(k). Id. at 72; accord *Callas v. United States*, 253 F.2d 838, 840 (2d Cir. 1958) ("Despite the powers undertaken by the United States pursuant to the trust agreement, for purposes of the [FTCA], it cannot follow that Kwajalein became part of the United States. It remained a foreign country.").

Therefore, the *Trust Island* cases concern property that was neither owned by a U.S. citizen nor located in the United States.

**B. THE MOTION MISSTATES THE LAW CONCERNING THE RIGHT OF AN ALIEN FRIEND TO BRING A CLAIM FOR JUST COMPENSATION**

The Motion advances one core legal argument: aliens abroad lack all rights under the Constitution, except in certain "limited circumstances" where an alien has "substantial connections" with the United States. Gov. Mot. at 3-4. This argument proceeds from an assertion set forth in the second sentence of the Government's Argument: "The Supreme Court has 'rejected the claim that aliens are entitled to rights outside the sovereign territory of the United States.'" Id. at 3 (quoting *United States v. Verdugo-Urquidez,* 494 U.S. 259, 269 (1990)). This assertion is false. It is not even an accurate quotation.

In *Verdugo-Urquidez,* the Court summarized an earlier holding by starting with the words, "[W]e have rejected the claim that aliens are entitled to *Fifth Amendment* rights outside the sovereign territory of the United States." Id. (citing *Johnson v. Eisentrager*, 339 U.S. 763 (1950) (emphasis added)). The Government's error in omitting the words "Fifth Amendment" from this quotation creates the misimpression that *Verdugo-Urquidez* supports the Government's absolutist view that aliens abroad enjoy no constitutional rights whatsoever. In fact, however, restoring the accurate quotation begins to show that the Supreme Court takes a more nuanced, provision-by-provision approach to the question of which constitutional rights apply to aliens abroad. Further examination of *Eisentrager* and *Verdugo-Urquidez* confirms that neither case requires this Court to rewrite *Turney* and the *Trust Island* cases by adding a "substantial connections" test found nowhere in the text of those binding precedents of the Court of Claims.

***1. Eisentrager's Holding is Expressly Limited to Alien Enemies and Has No Application to Alien Friends***

*Eisentrager* stands for the narrow proposition that, during wartime, the constitutional right to *habeas corpus* is not available to alien enemies. *Eisentrager*, 339 U.S. at 781; see *Rasul v. Bush*, 542 U.S. 466, 475-76 (2004) (limiting *Eisentrager* to circumstances presenting the "six

critical facts" of that case, including the fact that a "prisoner of our military authorities" who claims a writ of *habeas corpus* "(a) is an enemy alien"); cf. id. at 497 (Scalia, J., dissenting) ("Today's opinion … overrules *Eisentrager*"). In *Eisentrager*, the Supreme Court made clear that its holding is limited to alien enemies and has no implications for the rights of alien friends:

> It is war that exposes the relative vulnerability of the alien's status. The security and protection enjoyed while the nation of his allegiance remains in amity with the United States are greatly impaired when his nation takes up arms against us.… But disabilities this country lays upon the alien who becomes an enemy are imposed temporarily as an incident of war and not as an incident of alienage.

*Eisentrager*, 339 U.S. at 771; see also *El-Shifa Pharmaceutical Industries Co. v. United States*, 55 Fed. Cl. 751, 761 (Fed. Cl. 2003) (in *Eisentrager*, "the individuals claiming Constitutional protection were enemies, not merely aliens–a factor we find important").

Moreover, in *Verdugo-Urquidez*, the Supreme Court recognized that *Eisentrager* did not establish an absolute bar to the application of all constitutional rights to all aliens abroad. This is confirmed by reading the sentence (mis)quoted by the Government in its proper context:

> [I]t is not open to us in light of the *Insular Cases* to endorse the view that every constitutional provision applies wherever the United States Government exercises its power. [¶] Indeed, we have rejected the claim that aliens are entitled to Fifth Amendment rights outside the sovereign territory of the United States. In [*Eisentrager*], the Court held that enemy aliens arrested in China and imprisoned in Germany after World War II could not obtain writs of habeas corpus in our federal courts on the ground that their convictions for war crimes had violated the Fifth Amendment and other constitutional provisions. The *Eisentrager* opinion acknowledged that in some cases constitutional provisions extend beyond the citizenry….

*Verdugo-Urquidez*, 494 U.S. at 269. Different constitutional provisions, therefore, have different reach to aliens abroad in different circumstances, and the *Eisentrager* holding is limited to the reach of *habeas* rights to alien enemies.

Mrs. Atamirzayeva, unlike the military prisoners in *Eisentrager,* is an alien friend. *Eisentrager* is therefore of no import here. See *United States v. Tiede*, 86 F.R.D. 227, 245-47 (U.S. Ct. Berlin 1979) (distinguishing *Eisentrager* and other cases about alien enemies from a case concerning the constitutional rights of alien friends abroad).[4]

### *2. Verdugo-Urquidez's Holding is Expressly Limited to the Fourth Amendment and Has No Application to the Just Compensation Clause*

The Government also relies on *Verdugo-Urquidez* in support of its one-size-fits-all approach to the application of constitutional provisions to aliens abroad. This reliance, however, cannot withstand the slightest scrutiny. While *Verdugo-Urquidez* found that the Fourth Amendment embraces a "substantial connections" test, 494 U.S. at 274, it made abundantly clear that its holding is limited to the Fourth Amendment. Indeed, the opinion by Chief Justice Rehnquist expressly and repeatedly distinguished the Fourth Amendment from the Fifth:

- "Before analyzing the scope of the Fourth Amendment, we think it significant to note that it operates in a different manner than the Fifth Amendment, which is not at issue in this case." 494 U.S. at 264.

- A "constitutional violation [of the Fifth Amendment right against self-incrimination] occurs only at trial. The Fourth Amendment functions differently." Id. (internal citation omitted).

- "That text [of the Fourth Amendment], by contrast with the Fifth and Sixth Amendments, extends its reach only to 'the people.'" Id. at 265.

- "The language of [several] Amendments [with the phrase "the people"] contrasts with the words "person" and "accused" used in the Fifth and Sixth Amendments regulating procedure in criminal cases." Id. at 265-66.

[4] The Government also cites *Eisentrager* for the proposition that the Supreme Court has rejected "universal extraterritoriality." Gov. Mot. at 4. But Mrs. Atamirzayeva does not advocate "universal extraterritoriality" of all constitutional protections to all aliens. Rather, she invokes only the Just Compensation Clause – and controlling law in this Circuit applies this particular Clause to alien friends abroad.

Accord *Reid*, 354 U.S. at 8 (plurality opinion) ("The Fifth and Sixth Amendments, like Art. III, § 2, are also all inclusive with their sweeping references to 'no person' and to 'all criminal prosecutions.'"); *Tiede*, 86 F.R.D. at 259 (finding the Fifth Amendment's term "no person" and the Sixth Amendment's term "accused" are unambiguous and encompassed alien friends prosecuted in Germany before a United States Court).

Quite simply, *Verdugo-Urquidez* stands for the exact opposite of the Government's view that the application of all constitutional rights to aliens abroad is constrained by a single test. Chief Justice Rehnquist's opinion is the very embodiment of a provision-by-provision approach – allowing the text and nature of each constitutional provision to govern its application to aliens abroad. The provision-by-provision approach is crystallized even more clearly in Justice Kennedy's concurring opinion, which provided the necessary fifth vote to create a majority opinion for parts of *Verdugo-Urquidez*. Justice Kennedy quotes at length from Justice Harlan to reject both the view that all constitutional rights apply abroad and the opposite view that they never apply abroad. Rather, Justice Kennedy embraces a provision-by-provision approach, under which the application of each "specific guarantee" should be determined in light of the "conditions and considerations" relevant to that provision. *Verdugo-Urquidez*, 494 U.S. at 277 (Kennedy, J., concurring) (quoting *Reid*, 354 U.S. at 74 (Harlan, J., concurring)). The Supreme Court referenced this part of Justice Kennedy's opinion in *Rasul*, 542 U.S. at 484 n.15.[5]

---

[5] The Government conveniently ignores the fact that *Verdugo-Urquidez* specified that the "substantial connections" needed to invoke the Fourth Amendment must be "voluntary." 494 U.S. at 271-72 (holding that no warrant was required to search a suspect's home in Mexico, even though the suspect was already located in the United States before the search, because he had been brought to the United States involuntarily for prosecution). Once properly understood, it is clear that the "voluntary substantial connections" requirement cannot extend to the entire Constitution. Otherwise, a criminal defendant involuntarily brought to the United States could

(continued)

One key difference between the Warrants Clause of the Fourth Amendment and the Just Compensation Clause should be highlighted here. In *Verdugo-Urquidez,* the Court saw no reason to apply the Warrants Clause to a search in Mexico – when a warrant issued by a U.S. court is a "dead letter" outside the United States. 494 U.S. at 274; accord id. at 278 (Kennedy, J., concurring), 279 (Stevens, J., concurring in the judgment). Application of the Just Compensation Clause, by contrast, affords a real and meaningful benefit to property owners like Mrs. Atamirzayeva – receipt of Just Compensation ensures that a property owner will not have to bear alone a burden that, "in all fairness and justice, should be borne by the public as a whole." *Langenegger*, 756 F.2d at 1570. The Just Compensation Clause "can, without inconvenience or practical difficulty, be applied to a taking abroad…." *Turney*, 115 F. Supp. at 464.

In the end, therefore, *Verdugo-Urquidez* – like *Eisentrager* – provides no support for the Government's notion of an across-the-board rule that all constitutional rights are bound by a "substantial connections" requirement. It, rather, supports provision-by-provision analysis based on the text and purpose of each constitutional provision. Its analysis gives no reason to export the "substantial connections" requirement applicable to warrants from the Fourth Amendment into the very different context of the Just Compensation Clause. To the contrary, the reasoning

---

be tried without a jury, a lawyer, or any due process rights. Justice Kennedy emphatically rejected this possibility:

> I do not mean to imply, and the Court has not decided that persons in the position of the respondent have no constitutional protection. The United States is prosecuting a foreign national in a court established under Article III, and all of the trial proceedings are governed by the Constitution. All would agree, for instance that the dictates of the Due Process Clause of the Fifth Amendment protect the defendant.

*Verdugo-Urquidez*, 494 U.S. at 278 (Kennedy, J., concurring).

of *Verdugo-Urquidez* supports the continued application of the controlling precedents that afford Just Compensation to aliens abroad: the text of the Just Compensation Clause is not limited to "the people" of the United States, but instead applies to all "private property"; the purpose of the Clause is well-served by paying compensation for any property taken for public use wherever located and by whomever owned; and, as recognized in *Turney*, the Clause may be readily and beneficially applied by simple payment of compensation to those aliens abroad whose property is taken by the Government.

### C. THE GOVERNMENT IMPROPERLY INVITES THIS COURT TO REWRITE THE CONTROLLING LAW BY IMPOSING A NEW "SUBSTANTIAL CONNECTIONS" REQUIREMENT

As mentioned, under *Turney* and the *Trust Islands* cases, the controlling law in this Circuit is that aliens are entitled to Just Compensation for property taken abroad. These cases do not require that an alien have substantial connections with the United States as a precondition to eligibility for Just Compensation.[6]

This is not the first time that the Government has invoked *Verdugo-Urquidez* in an effort to replace the law of this Circuit with a "substantial connections" requirement. In *El-Shifa*,

[6] In this regard, the Government's recitation of the facts of *Turney* (Gov. Mot. at 6-7) – purportedly to show that the plaintiff there had "substantial connections" – is irrelevant to the actual holding that controls this Motion. Two years after *Turney*, the Court of Claims invoked *Turney* to reject another iteration of the Government's argument that the Just Compensation Clause does not apply to property abroad. *Seery*, 127 F. Supp. at 603. In an opinion – like *Turney* – by Judge Madden, the Court suggested that the difference between the alien plaintiff in *Turney* and the U.S. citizen plaintiff in *Seery* may not be "material." Id.

Likewise, the Government's footnote (Gov. Mot. at 6 n.5) about the circumstances in which the Government is liable for the conduct of another government has no bearing here. That is the very issue discussed in Argument B of the Government's June 5 motion; tellingly, the content of the Government's footnote was found in Argument B of that earlier motion. Under the Court's Order of June 13, this issue is not properly before the Court at this time and, in any event, it involves factual issues that cannot be resolved before completion of discovery.

55 Fed. Cl. at 762-64, this Court (per Judge Baskir) accepted that *Verdugo-Urquidez* "eroded" *Turney*, but held itself "bound to follow" *Turney* until such time, if ever, as the Federal Circuit may reverse *Turney*. Instead, this Court suggested that the Federal Circuit "may wish to revisit the *Turney* holding." Id. at 764. It proceeded to dismiss the case on other grounds. On appeal, the Federal Circuit noted the invitation to overrule *Turney* and expressly declined it. *El-Shifa*, 378 F.3d at 1352. The appellate court observed that the effect of reversing *Turney* would be to require "substantial connections" as a precondition to Just Compensation. Id. It refused to take that step, holding:

> [W]e decline to hold, as the government asks, that the Takings Clause does not protect the interests of nonresident aliens whose property is located in a foreign country unless they can demonstrate substantial voluntary connections to the United States."[7]

Id. The Federal Circuit therefore refused to adopt the "substantial connections" test advocated by the Government and expressly reserved to itself, *en banc*, any further consideration of the vitality of *Turney*. Id.

Yet, that is the very same argument advanced again by the Government in this case. To be sure, the Government now characterizes its argument as merely "reading" *Turney* "in light of" *Eisentrager* and *Verdugo-Urquidez*. But, as in *El-Shifa*, the Government "asks" this Court to hold that "the [Just Compensation] Clause does not protect the interests of nonresident aliens

[7] The Government seeks to avoid this inconvenient holding by claiming that the Federal Circuit's refusal to impose a "substantial connections" requirement is dicta. Gov. Mot. at 5-6. This position, however, ignores the fact that the Government specifically requested the Federal Circuit to change the governing legal standard in this Circuit by adopting a "substantial connections" requirement. When asked to change a legal standard, a court appropriately determines first which legal standard to apply before applying the governing legal standard to the facts before it. Accordingly, the Federal Circuit's refusal to adopt the "substantial connections" test is necessary to the court's decision. It is holding, not dicta.

whose property is located in a foreign country unless they can demonstrate substantial … connections to the United States." Id. There is simply no difference between the Government's previous call to overrule *Turney* and its cleverly repackaged call for a new "reading" thereof. The effect is the same – the difference is mere semantics. Respect for binding precedent (including the Federal Circuit opinion in *El-Shifa*), therefore, obliges this Court to decline the Government's invitation to rewrite the controlling law, as the power to reassess decisions of the Court of Claims is reserved exclusively to the Federal Circuit *en banc*. Cf. *Rodriguez de Quinjas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) (overturning a precedent and affirming an appellate decision that had declined to follow that precedent as "obsolescen[t]," while still criticizing the court below for its failure to "follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions"); accord id. at 486 (by "refus[ing] to follow a controlling precedent of this Court …., the Court of Appeals therefore engaged in an indefensible brand of judicial activism") (Stevens, J., dissenting).

Brief mention should be made of *Ashkir v. United States*, 46 Fed. Cl. 438, 441-45 (Fed. Cl. 2000), as the Government urges that the present case "should be resolved exactly" like *Ashkir*. Gov. Mot. at 8. In *Ashkir*, this Court (per Judge Allegra) reconceived *Turney* as a domestic case, taking the position that the individual liquidator for the alien corporation property-owner was a U.S. citizen.[8] So reconceived, *Ashkir* summarily distinguished *Turney* and paid it no further attention while adopting a "substantial connections" test imported from *Verdugo-Urquidez.* This Court's opinion in *El-Shifa* savaged *Ashkir*'s failure to respect precedent:

[8] Plaintiff's review of the *Turney* opinion finds no basis for *Ashkir*'s statement that the liquidator in *Turney* was a U.S. citizen.

> [W]e are loathe to agree that as trial judges we are not bound to follow a clear precedent because its reasoning is deficient or in apparent conflict with other precedent that can—we must be candid—be distinguished. In our precedent-based, common law structure, trial and intermediate courts are bound to follow decisions on the law articulated by superior courts…. Suffice it to say that lower courts have many devices to avoid or evade the inconveniences of a troublesome higher court opinion. The *Ashkir* decision, for instance, appears to have simply avoided the impact of *Turney* by classifying it as a case involving a United States plaintiff; of course this does not alter the fact that the owner of the taken property … was, prior to liquidation, a foreign corporation.

*El Shifa*, 55 Fed. Cl. at 763-64. In any event, neither *Ashkir*'s distinction of *Turney* nor its adoption of the "substantial connections" test survives the Federal Circuit's refusal to overrule *Turney* and adopt a "substantial connections" requirement. *El Shifa*, 378 F.3d at 1352. Simply put, *El-Shifa* deprives *Ashkir* of all import here.

Remarkably, the Government even asks this Court to re-read *Turney* "in light of" *Eisentrager*. Gov. Mot. at 4, 7. However, *Turney* was decided three years **after** *Eisentrager*. Indeed, the plaintiff in *Turney* addressed *Eisentrager* in his briefs. See Plaintiff's Reply Brief, *Turney v. United States*, at 310 n.5 (May 27, 1953) (excerpt appended as Ex. 1). There is simply no basis in law or common sense for adopting a new "reading" of *Turney* "in light of" an earlier precedent of which the Court of Claims was already aware when it decided *Turney*.

The Government has failed repeatedly in its attempt to impose a "substantial connections" requirement on the Just Compensation Clause. The fact remains that such a requirement is not the law in this Circuit. The Federal Circuit has expressly reserved to itself *en banc* the power to overrule *Turney*, like other binding decisions of the Court of Claims, and the Government cannot avoid controlling law by merely renaming its litigation strategies.

## **CONCLUSION**

For the forgoing reasons, the Government's Motion for Judgment on the Pleadings should be denied.

Respectfully submitted,

/s/ Perry S. Bechky
Perry S. Bechky
Christopher M. Ryan
Wesley J. Heath

SHEARMAN & STERLING LLP
801 Pennsylvania Avenue, N.W.
Suite 900
Washington, D.C. 20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100

*Attorneys for Plaintiff*

Dated: July 17, 2006