**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ZOYA ATAMIRZAYEVA, | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-1245 L |
| v. | ) | |
| | ) | Honorable Edward J. Damich |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS


I. The Supreme Court Has Emphatically Rejected Extra-Territorial Application of the Fifth Amendment to Aliens with No Voluntary Ties to the United States . . . . . 3

II. Dismissal of Plaintiff's Complaint is Not Tantamount to Overruling Turney . . . . . 7

III. Plaintiff Relies On Inappropriate Case Law in Support of the Standing Rule She Proposes for "Alien Friends" . . . . . 11

CONCLUSION . . . . . 15

## TABLE OF AUTHORITIES

### CASES

Ashkir v. United States,
46 Fed. Cl. 438 (2000) . . . . . . . . . . 8, 12, 13

Case of Wiggins,
3 Ct. Cl. 412 (1867) . . . . . . . . . . 11

El Shifa Pharmaceutical Industries Co. v. United States,
378 F.3d 1346 (Fed. Cir. 2004) . . . . . . . . . . 5, 9

Fleming v. United States,
352 F.2d 533 (Cl. Ct. 1965) . . . . . . . . . . 13

Hoffman v. United States,
53 F.Supp.2d 483 (D.D.C. 1999), aff'd in part, vacated in part on other grounds,
C.A. Fed. 2001, 17 Fed.Appx. 980 . . . . . . . . . . 6, 8

Johnson v. Eisentrager,
839 U.S. 763 (1950) . . . . . . . . . . 4, 5, 6, 7, 13

Juda v. United States,
6 Cl. Ct. 441 (1984) . . . . . . . . . . 2, 12, 13, 14

Nitol v. United States,
7 Cl. Ct. 405 (1985) . . . . . . . . . . 12

Porter v. United States,
496 F.2d 583 (Cl. Ct. 1974) . . . . . . . . . . 13

Rosner v. United States,
231 F. Supp. 2d 1202 (S.D. Fla. 2002) . . . . . . . . . . 8

Russian Volunteer Fleet v. United States,
282 U.S. 481 (1931) . . . . . . . . . . 11

Seery v. United States,
127 F.Supp. 601 (Ct. Cl. 1955) . . . . . . . . . . 11

Turney v. United States,
115 F. Supp. 457 (Ct. Cl. 1953) . . . . . . . . . . 2, 5, 8, 9

United States v. VerdugoUrquidez,
494 U.S. 259 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 10, 11, 13, 14

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| ZOYA ATAMIRZAYEVA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 05-1245 L<br><br>Honorable Edward J. Damich |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff's opposition suggests a sweeping re-write of constitutional law by arguing that the Fifth Amendment "allows property owners to seek Just Compensation when the government takes their property <u>regardless of the property's location or the owners' nationality</u>." Plaintiff's Opposition to the United States' Motion for Judgment on the Pleadings ("Pl's. Opp.") at 2 (emphasis added). To accommodate this startling expansion of constitutional reach, Plaintiff posits that this case should be controlled by a standing rule of Plaintiff's own devise: that "alien friends" have standing to sue for just compensation under the Fifth Amendment even when their property is located outside the United States and Plaintiff has established no voluntary ties or substantial connections to the United States. Plaintiff has failed to cite a single case from either the Supreme Court or the Federal Circuit that relies upon this proposed rule as the basis for establishing standing of a non-resident alien. Moreover, the proposed rule is contrary to express language in decisions of the Supreme Court, which have refused to extend Fifth Amendment

protections to aliens located outside the United States. In addition, the sole trial court found to have expressly considered the rule proposed by Plaintiff has rejected it on the ground that it is contrary to established Supreme Court precedent.

Plaintiff also argues that dismissal of her case would be tantamount to overruling Turney v. United States, 115 F. Supp. 457 (Ct. Cl. 1953). This assertion is simply incorrect. The decision in Turney is entirely consistent with Supreme Court precedent, which has established that Fifth Amendment protections may be asserted with respect to property outside the United States, but only by individuals who have substantial connections with the United States, such as American citizens or, as explained more fully *infra*, citizens of the Trust Territories of the Pacific Islands. Moreover, given the uncertainty of the citizenship of the plaintiff in Turney, it is both unwise and unnecessary to rely upon its holding as a basis to expand Fifth Amendment standing to foreign citizens who lack substantial connections with the United States. As a foreign citizen with no connections to the United States, neither Turney nor any other precedent confers standing on Plaintiff in this case.

Finally, Plaintiff attempts to bolster the proffered “alien friend” rule by citing to a line of cases from the Trust Territories of the Pacific Islands (“Trust Territories”). This line of cases, however, addressed only the standing of citizens of the Trust Territories. The decisions held that, as a result of the special governance relationship between the United States and the government of the Trust Territories, citizens and property within the Trust Territories should be afforded standing to assert constitutional protections that would otherwise be denied to “citizens of foreign nations.” Juda v. United States, 6 Cl. Ct. 441, 458 (1984). Given Plaintiffs’ Uzbek citizenship and the location of the property in Uzbekistan, which has no such special governance

relationship with the United States, these cases are inapposite.

For all of these reasons, Plaintiff is unable to meet her burden of proving standing in this Court and, thus, her complaint should be dismissed with prejudice.[1/]

## I. The Supreme Court Has Emphatically Rejected Extra-Territorial Application of the Fifth Amendment to Aliens with No Voluntary Ties to the United States

Plaintiff asserts that the Supreme Court's ruling in Johnson v. Eisentrager precludes only "alien enemies" from establishing standing to bring Fifth Amendment just compensation claims in United States courts. Pl's. Opp. at 8-9. From this assertion, Plaintiff makes the unsupported and unsupportable leap to the conclusion that "alien friends," as opposed to "alien enemies," are conversely entitled to assert the protections of the Fifth Amendment regardless of their domicile or the location of their property. Plaintiff argues that, as an "alien friend," she has standing. Id. at 7. However, the result of this logical leapfrog – expansion of constitutional protections beyond the sovereign territory of the United States to persons with no voluntary contacts with the United States – is contrary to Supreme Court precedent.

---

[1/]Plaintiff's Opposition contains the following factual assertions, which are unsupported by the evidence:

> On or about December 20, 1999, the Government made an express verbal "demand" that the local authorities in Tashkent destroy Feruza within three days "for the sake of the security of the U.S. Embassy." On or about December 23, 1999, the local authorities in Tashkent . . . acted at the demand of the Government and for its benefit, specifically "for the security improvements of the Embassy." Officials from the Embassy were physically present at and oversaw the demolition of Feruza.

Pl's. Opp. at 3 (citations omitted). Because these factual allegations are not relevant to the instant motion, however, the United States will not address these factual inaccuracies in this reply.

While the plaintiffs in Johnson v. Eisentrager were admittedly categorized as "alien enemies," the Supreme Court did not rule that their status as such was the crucial determinant in its holding that they lacked standing to pursue Fifth Amendment claims. Indeed, the Supreme Court specifically stated that its determination regarding the standing of aliens located outside the United States was applicable regardless of status as an alien enemy or alien friend:

> We have pointed out that the privilege of litigation has been extended to aliens, **whether friendly or enemy**, only because permitting their presence in the country implied protection. No such basis can be invoked here, for these prisoners at no relevant time were within any territory over which the United States is sovereign . . . .

Johnson v. Eisentrager, 839 U.S. 763, 777-78 (1950) (emphasis added). Instead, the Supreme Court's ruling established that an alien's standing to assert Fifth Amendment protections was driven by the alien's presence within the United States. The Supreme Court repeatedly focused on this pivotal attribute:

> The alien, to whom the United States has been traditionally hospitable, has been accorded a generous and ascending scale of rights as he **increases his identity with our society**.
>
> * * *
>
> . . . we have extended to the person and property of **resident** aliens important constitutional guaranties – such as the due process of the Fourteenth Amendment. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220.
>
> * * *
>
> But, in extending constitutional protections beyond the citizenry, **the Court has been at pains to point out that it was the alien's presence within its territorial jurisdiction that gave the Judiciary power to act**.

Johnson v. Eisentrager, 839 U.S. at 770, 771 (emphasis added). Based upon this reasoning, the Supreme Court squarely rejected the extraterritorial application of Fifth Amendment protections to aliens. Id. at 784-85 ("Such extraterritorial application of organic law would have been so significant an innovation in the practice of governments that, if intended or apprehended, it could scarcely have failed to excite contemporary comment. Not one word can be cited. No decision of this Court supports such a view. . . ."). Because Plaintiff is an alien, whose property is located outside the United States and she has taken no steps to increase her "identity with our society," she lacks standing to assert Fifth Amendment protections in this Court.

Even if, contrary to the clear language of its opinion, the Supreme Court's holding in Johnson v. Eisentrager can be said to apply only to "alien enemies," it does not conversely follow that the Court's ruling thereby grants standing to "alien friends." The Court's opinion never once suggests that by denying the standing of alien enemies to assert Fifth Amendment protections it was somehow simultaneously granting such standing to alien friends. Plaintiff can cite no passage from Johnson v. Eisentrager that grants standing to aliens outside the sovereign territory of the United States and cites no other authority in support of her assertion that Johnson v. Eisentrager granted standing to assert Fifth Amendment protections to alien friends no matter where they are located.[2/]

If there was any uncertainty as to the breadth of the application of the Supreme Court's holding in Johnson v. Eisentrager, vis-a-vis alien enemies versus alien friends, it was squarely

[2/]Plaintiff relies heavily upon Turney v. United States, 115 F. Supp. 457 (Ct. Cl. 1953) and dicta from El Shifa Pharmaceutical Industries Co. v. United States, 378 F.3d 1346 (Fed. Cir. 2004) to support the assertion that "alien friends" have standing to assert Fifth Amendment protections. Pl's. Opp. 5-6, 13-15. Neither of these decisions, however, make the distinction between alien enemies and alien friends urged upon this Court by Plaintiff.

resolved in United States v. Verdugo-Urquidez, 494 U.S. 259, 269 (1990). In the later case, Justice Rehnquist, writing for the majority, characterized the Court's prior "rejection of **extraterritorial application** of the Fifth Amendment" as **"emphatic."** Id. (emphasis added). Justice Rehnquist plainly and straightforwardly set forth the holding of Johnson v. Eisentrager when he wrote "we have rejected the claim that aliens are entitled to Fifth Amendment rights outside of the sovereign territory of the United States."[3/] Id. Justice Rehnquist did not parse the application of this "emphatic" position as between alien enemies and alien friends as Plaintiff urges this Court to do. Justice Kennedy similarly confined the reach of the Fifth Amendment when he wrote that "the Constitution does not create, nor do general principles of law create, any juridical relation between our country and some undefined, limitless class of noncitizens who are **beyond our territory**." Id. at 275 (Kennedy J. concurring)(emphasis added).

Finally, Plaintiff fails to cite the sole trial court opinion that considered and rejected the "alien friend" rule urged upon this Court by Plaintiff. Hoffman v. United States, 53 F.Supp.2d 483 (D.D.C. 1999), *aff'd in part, vacated in part on other grounds*, C.A. Fed. 2001, 17 Fed.Appx. 980. In Hoffman – a case in which the trial court posited and analyzed the "alien friend" rule proposed by Plaintiff in the instant case – the United States District Court for the District of Columbia rejected the proposed rule as contrary to the Supremes Court's holding in Johnson v. Eisentrager. Id. at 490-91. In Hoffman, plaintiffs were German citizens whose ancestor, Heinrich Hoffman, was a photographer and personal friend of Adolf Hitler. The

[3/]Plaintiff makes much of the admittedly careless but unintentional omission of the words "Fifth Amendment" from this same quote in the United States' moving papers. Pl's. Opp. at 8. The inclusion of these words, however, does nothing to advance Plaintiff's argument in this case given that she is a non-resident alien asserting a Fifth Amendment protection, which is exactly what the Supreme Court emphatically rejected in Verdugo-Urquidez, 494 U.S. at 269.

plaintiffs sued the United States seeking remuneration for the taking of Hoffman's photographic archive of Hitler by the United States Army following the war. As the court explained, "[p]laintiffs' takings claims are based on the proposition that 'non-resident **friendly** aliens are also entitled to the protection of the Fifth Amendment's prohibition on unlawful taking for public use of their property in the United States without just compensation.'" Id. at 490 (emphasis added). In rejecting the plaintiffs' claim, Judge Kennedy quoted extensively from Johnson v. Eisentrager and wrote:

> The more general proposition that *non-resident* friendly aliens with no voluntary or contractual relationship with the United States are entitled to Fifth Amendment rights, however, was emphatically rejected by the Supreme Court in Johnson v. Eisentrager, 339 U.S. 763, 70 S.Ct. 936, 94 L.Ed. 1255 (1950): "Such extraterritorial application of organic law would have been so significant an innovation in the practice of governments that, if intended or apprehended, it could scarcely have failed to excite contemporary comment. Not one word can be cited. No decision of this Court supports such a view. None of the learned commentators on our constitution has even hinted at it. The practice of every modern government is opposed to it."

Id. at 490-91 (emphasis in original), quoting Johnson v. Eisentrager, 839 U.S. at 784 and citing Verdugo-Urquidez, 494 U.S. at 269.

Because Supreme Court precedent has squarely rejected expansion of Fifth Amendment protections to non-resident aliens who have no voluntary ties to the United States, Plaintiff lacks standing to assert a claim under the just compensation clause. As such, Plaintiff's Complaint should be dismissed with prejudice.

## II. Dismissal of Plaintiff's Complaint is Not Tantamount to Overruling Turney

Plaintiff suggests that if this Court properly applies the holdings in Johnson v.

Eisentrager and Verdugo-Urquidez – and dismisses Plaintiff's Complaint because she is an alien whose property is located outside the United States – the Court will run afoul of the Court of Claims' decision in Turney v. United States. Pl's. Opp. at 14-15. This argument is in error for several reasons.

First, as set forth in detail in the United States' opening brief, the instant case can be dismissed without running afoul of the holding in Turney because both the owners of the property in that case and the property itself had substantial connections with the United States. As the Supreme Court stated in Verdugo-Urquidez, constitutional protections may be asserted by aliens when they have "developed substantial connections" with the United States.[4/] Verdugo-Urquidez, 494 U.S. at 271. For example, in Hoffman the court recognized that a contract between the plaintiff and the United States – like the contract that existed between the corporation and the United States in Turney – could create the necessary substantial connection. Hoffman, 53 F.Supp.2d at 490-91. The substantial connections requirement established by the Supreme Court allows the Turney decision to be read in harmony with Johnson v. Eisentrager and Verdugo-Urquidez, and still precludes Plaintiff from asserting standing in the instant case. In short, because Plaintiff has no substantial connections with the United States she lacks standing to assert the Fifth Amendment protection she invokes before this Court.

---

[4/]Plaintiff is critical of the substantial connections requirement announced by the Supreme Court, and applied in both Hoffman, 53 F. Supp. 2d at 490-91, Ashkir v. United States, 46 Fed. Cl. 438, 443-44 (2000) ("although not always identified as such, the 'substantial connections' requirement is well-evidence in numerous cases involving takings claims"), and Rosner v. United States, 231 F. Supp. 2d 1202, 1212-14 (S.D. Fla. 2002) (finding Ashkir persuasive and applying the substantial connections requirement to reject a takings claim by foreign citizens). Despite Plaintiff's criticism of the substantial connections requirement, it is worth noting that Plaintiff never denies the United States' assertion in its opening brief that Plaintiff has no connections to the United States.

Second, if some unavoidable conflict exists between the Supreme Court's decisions in Johnson v. Eisentrager and Verdugo-Urquidez on the one hand, and the Court of Claims' decision in Turney v. United States on the other, this Court is, first and foremost, bound to apply the holdings of the Supreme Court. As set forth supra, however, the Court does not face this dilemma because all three holdings can be read to avoid conflicting outcomes and still counsel a dismissal of the instant case.

Third, the discussion of Turney in the Federal Circuit's decision in El Shifa Pharmaceutical Industries Co. v. United States, 378 F.3d 1346 (Fed. Cir. 2004) does not preclude dismissal of Plaintiff's Complaint. Plaintiff argues that the Federal Circuit's discussion of Turney in El-Shifa, would require this Court to overrule Turney in order to limit the extraterritorial application of the Fifth Amendment to those with substantial connections to the United States. Pl's. Opp. at 14. As set forth in the United States' brief in support of its motion, the Federal Circuit's discussion of the extraterritorial application of the Fifth Amendment in El Shifa is unquestionably *dicta*. U.S. Mot. at 5-6. The Federal Circuit itself recognized this fact in its opinion when it made clear that it was resolving the case on other grounds. El Shifa, 378 F.3d at 1352 ("because we think the appellants' taking claim at bottom presents a nonjusticiable political question, we are not required to explore whether Turney enjoys any continuing vitality after Verdugo-Urquidez in order to affirm the decision on appeal"). Even Plaintiff recognizes this fact in her own brief which, in discussing El-Shifa, states: "[the Federal Circuit] proceeded to dismiss the case **on other grounds**." Pl's. Opp. at 14 (emphasis added).[5/]

---

[5/]Despite this clear admission, Plaintiff presents, without citation to case law, a convoluted argument that concludes with the proposition that the Federal Circuit's discussion of extraterritorial application of the Fifth Amendment was not dicta. Pl's. Opp. at 14, n. 7. This

Fourth, given that the nationality of the plaintiff in Turney is unclear, reversal of that decision is unnecessary to limit its holding to the foreign property of those with substantial connections to the United States. Plaintiff's opposition takes Judge Allegra to task for assuming in his opinion in Ashkir that the plaintiff in Turney, the liquidating trustee of a corporation, was a United States citizen. Pl's. Opp. at 15 and n. 8. Yet, Plaintiff similarly makes unsupported assumptions regarding the citizenship of the plaintiff in Turney. In discussing the decision in Turney, Plaintiff refers to the Turney plaintiff as "an alien corporation." Pl's. Opp. at 5. The United States' review of the Turney opinion finds no basis for Plaintiff's statement that the plaintiff was an alien. First, the named plaintiff was in fact the liquidating trustee of the corporation, not the corporation itself, whose citizenship was never disclosed. Second, even if the corporation's citizenship was controlling, the decision is silent as to the citizenship of the corporation. Indeed, the only citizenship clearly identifiable in the opinion is the American citizenship of the initial purchasers of the property, two former members of the United States Air Force. These gentlemen later joined with two other men, described only as "residents of Hong Kong," to create the corporation and become its initial shareholders. The opinion never makes reference to the place of incorporation or whether the corporation had other connections to the United States. Thus, contrary to Plaintiff's assumption, it is not clear that the plaintiff in Turney was an alien. Thus, in light of the Supreme Court's limitation of standing to assert Fifth Amendment protections to those with substantial connections to the United States – the better

---

runs counter to Supreme Court guidance that assumptions relied upon by a court to reach the dispositive issue are not themselves binding. United States v. Verdugo-Urquidez, 494 U.S. 259, 272 (1990) (courts often "decide particular issues while assuming without deciding the validity of antecedent propositions . . . . [S]uch assumptions – even on jurisdictional issues – are not binding in future cases that directly raise the questions.") (citations omitted).

reading of Turney is that its holding is similarly limited to the proposition that the Fifth Amendment can be invoked outside the United States only if the plaintiff has substantial connections to the United States.

### III. Plaintiff Relies On Inapposite Case Law in Support of the Standing Rule She Proposes for "Alien Friends"

Plaintiff argues that the standing of an "alien friend" was first recognized in Russian Volunteer Fleet v. United States, 282 U.S. 481 (1931),[6] a case in which the Supreme Court found that aliens had standing to sue for the taking of property located within the sovereign territory of the United States. See Pl's. Opp. at 5. Unlike the plaintiffs in Russian Volunteer Fleet, however, Plaintiff's property is not located in the United States and thus the finding in that case does not, in fact, support the rule Plaintiff urges upon this Court. Indeed, in addressing the extraterritorial application of the Fifth Amendment in Verdugo-Urquidez, the Supreme Court specifically considered its previous holding in Russian Volunteer Fleet. Justice Rehnquist, writing for the majority, held that Russian Volunteer Fleet, among other cases, did not extend the Fifth Amendment to aliens located outside the United States. "These cases, however, establish only that aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this county." Verdugo-Urquidez, 494 U.S. at 271. As with the plaintiffs in Russian Volunteer Fleet and Verdugo-Urquidez, Plaintiff in the instant case "is an alien who has had no previous significant voluntary connection

[6] Plaintiff also cites, in passing, to Case of Wiggins, 3 Ct. Cl. 412 (1867), and Seery v. United States, 127 F.Supp. 601, 603 (Ct. Cl. 1955), for the proposition that the just compensation clause can be invoked to protect property located abroad. Pl's. Opp. at 5. Both of these cases, however, involve the foreign property of American citizens. Thus, the holdings do not stand for the proposition that an alien, whether friend or enemy, can invoke Fifth Amendment protection for property located outside the United States, only that American citizens may do so.

with the United States, so these cases avail [her] not." Id.

Plaintiff also relies upon two cases from this Court's predecessor, the United States Claims Court, involving property located in the Trust Territories of the Pacific Islands ("Trust Territories") in support of her novel rule of standing. Even Plaintiff, however, admits that the findings in these cases were limited to "property located in the Trust Islands." Pl's. Opp. at 6. The pivotal holding in these cases is clearly limited to property located in the Trust Territories, which by virtue of their status enjoy a unique and heightened relationship with the United States. Because Uzbekistan, the country of Plaintiff's citizenship and the location of the property at issue, does not enjoy a similar relationship with the United States, these cases are unavailing to Plaintiff.

The lead Trust Territory case cited by Plaintiff to support her claim that constitutional protections have been applied by the Claims Court to property located outside the United States is Juda v. United States, 6 Cl. Ct. 441 (1984).[7] In that case, however, the Claims Court limited its ruling to property located within the Trust Territories because:

> the United States created a relationship with [the citizens of the Trust Territories] that exceeded in both nature and degree the relationship normally taken with a 'foreign' country or by a trustee charged to protect the inhabitants against the loss of their lands and resources and to protect their health. The United States has accorded the people of the Marshall Islands benefits which far surpass the benefits normally extended to citizens of foreign nations.

Id. at 458. Judge Allegra considered these Trust Territory cases in Ashkir v. United States, 46

[7] Plaintiff also cites to Nitol v. United States, 7 Cl. Ct. 405 (1985). The decision in Nitol simply applied, without further analysis, the Court's prior decision in Juda based upon the same facts. Thus, the analysis of Juda *infra*. is equally applicable to the Nitol decision.

Fed. Cl. 438, 444 (2000), and similarly found them inapplicable beyond the Trust Territories. Indeed, Judge Allegra held that, were the decisions to be interpreted as broadly as Plaintiff argues in the instant case, "they would be inconsistent with the Supreme Court's opinions in Verdugo-Urquidez and Johnson [v. Eisentrager]." Id. n. 12.

Plaintiff also relies upon two Trust Territory cases from the Court of Claims as support for her proposed rule of standing for "alien friends." Porter v. United States, 496 F.2d 583 (Cl. Ct. 1974); Fleming v. United States, 352 F.2d 533 (Cl. Ct. 1965). First, because these holdings were based upon other grounds,[8] any discussion of the standing of aliens to assert constitutional protections for property located outside the United States is merely dicta. Second, both decisions were issued prior to the Supreme Court's "emphatic" pronouncement precluding extraterritorial application of the Fifth Amendment to non-citizens and its limitation of the Fifth Amendment's

---

[8] In Fleming, 352 F.2d at 536, the court's holding turned on the fact that the Plaintiffs did not possess an interest in the property that was allegedly taken. The court did not raise, analyze, or address the issue of standing. The Claims Court later recognized this distinction when it wrote, "in Fleming, the constitutional issue did not need to be decided because the plaintiffs could not establish they legally had title to the [property]." Juda, 6 Cl. Ct. at 455.

In Porter, 496 F.2d at 591-92, the court similarly did not rely upon the extraterritorial application of the just compensation clause, choosing instead to base its holding upon the fact that the taking was not perpetrated by the United States, but by another governmental entity, the government of the Trust Territories. Indeed, the only arguably relevant statement by the Court was the benign recognition that some prior case law held that the Fifth Amendment had been applied to property located outside the United States. Id. at 591. The court made no attempt to apply the prior jurisprudence to the facts in Porter and conducted none of the analysis that would be required to extend constitutional protections beyond the border, such as the citizenship of the plaintiff, the plaintiff's voluntary connections to the United States, and the status of the territory where the property was located vis-a-vis the United States. As a result, the Claims Court similarly recognized that, "[o]n the facts in Porter, no taking had been shown, and the court did not have to reach the constitutional issue." Juda, 6 Cl. Ct. at 455. In fact, as this Court will recognize, the finding in Porter actually supports dismissal in the instant case, because the actions that resulted in the alleged taking were similarly implemented by an entity other than the United States government. Id. at 591-92 ("[H]ere [plaintiffs] must show the United States carried out the alleged taking of property. This they have failed to do.").

extraterritorial reach to those with voluntary ties to the United States. Verdugo-Urquidez, 494 U.S. at 269, 271. Third, both cases are factually distinct from the instant case, in that the property was located in the Trust Territories, which as discussed supra, enjoys a unique status vis-a-vis the United States in relation to the assertion of constitutional protections. Juda, 6 Cl. Ct. at 458.

Because the line of Trust Territory cases cited by Plaintiff only address the standing of citizens of the Trust Territories they do not support Plaintiff's attempt to expand Fifth Amendment protections to all alien friends regardless of their ties to the United States. In fact, if these cases have any relevance to the instant case, they support the conclusion that constitutional protections may only be asserted by those with substantial connections with the United States. As the decisions in the Trust Territories demonstrate, the plaintiffs in those cases were only afforded standing because of the close and unique relationship between their government and that of the United States. Uzbekistan has no such status with the United States.

**CONCLUSION**

For all of the reasons set forth supra and in the United States' opening brief, Plaintiff lacks standing to assert Fifth Amendment protections in this Court. As such, Plaintiff's Complaint must be dismissed with prejudice.

August 3, 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

/s/ James D. Gette

JAMES D. GETTE
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044
(202) 305-1461

Of counsel:
Emily E. Daughtry, Attorney-Adviser
Office of the Legal Adviser
United States Department of State
2430 E Street, NW
Suite 203, South Building
Washington, DC 20037-2800
(202) 776-8436